05-7010-cv
Chapman v. NYS Division for Youth

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2007

(Argued: October 25, 2007          Decided: October 14, 2008)

Docket No. 05-7010-cv

------------------------------------------------------x

BRUCE CHAPMAN AND HANDLE WITH CARE BEHAVIOR
MANAGEMENT SYSTEM, INC.,

          Plaintiffs-Appellants,

                    -- v. --

NEW YORK STATE DIVISION FOR YOUTH, NEW YORK STATE
OFFICE OF CHILDREN & FAMILY SERVICE, NEW YORK STATE
DEPARTMENT OF SOCIAL SERVICES, JOHN JOHNSON,
Commissioner of New York State Office of Children and
Family Services, and former Commissioner of the New
York State Division for Youth, in his official and
individual capacity, MARGARET DAVIS, former Director
of Training for the New York State Division for
Youth, and former Director of Training for New York
State Office of Children and Family Services, in her
official and individual capacity, PATSY MURRAY,
former Associate Training Technician for the New York
State Division for Youth, and current position as
Trainer for New York State Office of Children and
Family Services, in her official and individual
capacity, CORNELL UNIVERSITY, JEFFREY LEHMAN,
President of Cornell University, in his official and
individual capacity, DOCTOR HUNTER RAWLINGS, III,
former President of Cornell University, in his
official and individual capacity, NEW YORK STATE
COLLEGE OF HUMAN ECOLOGY, FAMILY LIFE DEVELOPMENT
CENTER, RESIDENTIAL CHILD CARE PROJECT, THERAPEUTIC
CRISIS INTERVENTION, MARTHA HOLDEN, Project Director
of the Residential Child Care Project and Therapeutic
Crisis Intervention Trainer and Coordinator, in her

1

official and individual capacity, MICHAEL NUNNO, Project Director of the Residential Child Care Project and Therapeutic Crisis Intervention Trainer and Coordinator, in his official and individual capacity, HILLSIDE CHILDREN'S CENTER, DENNIS RICHARDSON, President and CEO of Hillside Children's Center, in his official and individual capacity, DOUGLAS BIDLEMAN, Employee of Hillside Children's Center and Therapeutic Crisis Intervention Trainer, in his official and individual capacity,

<u>Defendants-Cross-Defendants-Appellees</u>.

---------------------------------------------------------x

B e f o r e :  WALKER, STRAUB, and POOLER, <u>Circuit Judges</u>.

Plaintiffs-appellants seek review of an order of the United States District Court for the Northern District of New York (David N. Hurd, <u>Judge</u>) dismissing their copyright and antitrust claims pursuant to Fed. R. Civ. P. 12(b) and (c) and declining to exercise supplemental jurisdiction over their state law claims. The district court dismissed plaintiffs' copyright claims on the basis that a contract unambiguously granted the defendants a perpetual license to copy plaintiffs' materials. We conclude that the contract is ambiguous, and remand the case for further fact-finding on this issue.  With regard to plaintiffs' antitrust claims, we agree with the district court that plaintiffs have failed to allege a plausible antitrust market.  We therefore affirm the district court's order dismissing plaintiffs' antitrust claims with prejudice.

AFFIRMED in part; VACATED and REMANDED in part.

2

GUY L. HEINEMANN, Guy L. Heinemann, P.C. (Irene M. Vavulitsky, Guy L. Heinemann, P.C., and Hilary Adler, Law Offices of Hilary Adler, Gardiner, N.Y., on the brief), New York, N.Y., for Plaintiffs-Appellants.

ANDREA OSER, Assistant Solicitor General (Daniel Smirlock, Deputy Solicitor General, on the brief), for Eliot Spitzer, Attorney General of the State of New York, Albany, N.Y., for Defendants-Appellees, New York State Division for Youth, New York State Department of Social Services; New York State Office of Children & Family Services, John Johnson; Margaret Davis, and Patsy Murray.

NELSON E. ROTH (Valerie L. Cross and Norma W. Schwab, on the brief) Office of the University Counsel, Ithaca, N.Y., for Defendants-Appellees, Cornell University, Jeffrey Lehman, Hunter Rawlings, III, New York State College of Human Ecology, Family Life Development Center, Residential Child Care Project, Therapeutic Crisis Intervention, Martha Holden, and Michael Nunno.

DAVID H. WALSH, Petrone & Petrone, P.C., Syracuse, N.Y., for Defendants-Appellees, Hillside Children's Center, Dennis Richardson, and Douglas Bidleman.

JOHN M. WALKER, JR., Circuit Judge:

Plaintiffs-appellants Bruce Chapman and Handle With Care Behavior Management System, Inc., (collectively "HWC") market a training program ("Handle With Care") that teaches individuals a

3

safe technique for physically restraining others.  HWC sued three groups of defendants alleging generally that they had infringed HWC's copyright and adversely affected the market for such restraint services in violation of the antitrust laws.

Specifically, HWC sued various New York state agencies and their officers and agents (collectively "the state defendants"). The state defendants include: the New York State Office of Children and Family Services ("OCFS"), which in 1998 succeeded the New York State Division for Youth ("DFY") and the New York State Department of Social Services ("DSS") also named as defendants; John Johnson, the former Commissioner of DFY and the current Commissioner of OCFS; Margaret Davis, the former Director of Training for DFY and the current Director of Training for OCFS; and Patsy Murray, a former Associate Training Technician for DFY and current Trainer for OCFS.

HWC also sued Cornell University and the New York State College of Human Ecology (the "College") and related persons and entities (collectively "the Cornell defendants").  The Cornell defendants include: Cornell University; Jeffrey Lehman, Cornell's then-current president; Hunter Rawlings III, Cornell's former president; the College and subsidiaries the Family Life Development Center, the Residential Child Care Project, and Therapeutic Crisis Intervention ("TCI"); and Project Directors of the Residential Child Care Project and TCI Trainers and

4

Coordinators, Martha Holden and Michael Nunno.

Finally, HWC sued Hillside Children's Center ("HCC"), a private childcare provider and residential treatment center, and two of its officers, Dennis Richardson, HCC's president, and Douglas Bidleman, HCC's Coordinator for Sociotherapy (collectively "the Hillside defendants").

The state and Cornell defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), and the Hillside defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(c). The district court granted both motions as to all of plaintiffs' federal claims and declined to exercise supplemental jurisdiction over the remaining state law claims. The federal claims dismissed were: (1) copyright infringement against the state defendants; and (2) conspiracy to monopolize and restrain trade, together with monopoly, restraint of trade, and unfair competition, against all defendants.

The district court dismissed plaintiffs' copyright claim on the basis that the contract at issue unambiguously granted the state defendants the right to copy plaintiffs' materials indefinitely. We disagree with that conclusion, find the contract ambiguous, and remand the case to the district court to determine the duration of the license to copy plaintiffs' materials granted under the contract.

With regard to the antitrust claims, the district court held

5

that the plaintiffs failed to offer a plausible relevant market in which the defendants monopolized the trade for restraint services or engaged in restraint of trade or unfair competition with respect thereto.  We agree that the plaintiffs have failed to define a plausible market and conclude that the plaintiffs cannot establish that the defendants have substantial market power in the market for restraint services properly defined.  Accordingly, we affirm the district court's dismissal of plaintiffs' antitrust claims and vacate the district court's dismissal of the copyright claim against the state defendants.

**BACKGROUND**

For purposes of reviewing a motion to dismiss, we assume the accuracy of the plaintiffs' allegations in their complaint. Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007) (per curiam). "[O]ur review is limited to undisputed documents, such as a written contract attached to, or incorporated by reference in, the complaint." Official Comm. Of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P., 322 F.3d 147, 160 n.7 (2d Cir. 2003) (citing Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 47 (2d Cir. 1991)).

OCFS (previously DFY and DSS) operates juvenile facilities and monitors child care providers in the state of New York.  The New York legislature mandated that OCFS:

promulgate regulations concerning standards for the protection of children in residential facilities and programs operated or certified by the division, from abuse and maltreatment. . . Such standards shall . . . establish as a priority that: . . . administrators, employees, volunteers and consultants receive training in . . .: the characteristics of children in care and techniques of group and child management including crisis intervention.

N.Y. Exec. Law § 501(12); see also N.Y. Soc. Serv. Law § 462(1)(c).  To that end, state regulations require that each supervised child care facility "submit[] its restraint policy to [OCFS]" and prohibit the use of "any method of restraint unless it has . . . been approved in writing by [OCFS]."  18 N.Y. Comp. Codes R. & Regs. § 441.17(c).

In 1987, New York State purchased HWC's method for use in its own facilities.  That year, DFY contracted with HWC to provide training in HWC's methods to its staff (the "1987 contract").  The 1987 contract provided that HWC would train 120 DFY staff members over fifteen days in HWC's methods.  It further provided that HWC would furnish DFY with one "copy of Handle With Care (copyrighted) which [DFY] may reproduce in whole or in part as required by [DFY]" and "a videomaster of the restraint program to be used by [DFY's] master trainers in conducting training programs for facility staff."  Finally, the contract stated that "[t]his agreement shall commence January 1, 1988 and end March 31, 1988."  There is no dispute that HWC fulfilled its obligations under the 1987 contract and trained 120 DFY staff,

7

some of whom were master trainers, during the relevant three-month term.  In 1997, however, after two incidents at DFY facilities in which children were harmed by the use of improper restraint techniques, DFY requested that HWC provide retraining to its staff.

The resulting contract (the "1997 contract") provided that HWC would "update and recertify existing [DFY] Crisis Management/Physical Restraint trainers in the techniques encompassed in the Handle With Care program;"  that it would "deliver twelve (12) days of training to approximately one hundred twenty (120) existing [DFY] trainers;" and that DFY had "the right to reproduce all training materials."[1]  The contract provided that the "agreement shall commence May 1, 1997 and end August 31, 1997."  Additionally, HWC required DFY staff members to sign individual contracts acknowledging that their certification to train in HWC's methods terminated after one year.

HWC furnished the training and materials in conformity with the 1997 contract.  Thereafter, there is no dispute that DFY master trainers, using HWC's materials, trained the rest of DFY's staff in the HWC method.  A year later, DFY merged into OCFS and the latter continued to use HWC's materials to train its staff.

---

[1]    We note that, as defendants acknowledge on appeal, the district court was mistaken in its view that the contract was "drafted by Chapman."

HWC faced competition in the restraint method and training business. Cornell, in partnership with the State of New York, developed and marketed its own restraint method and training services called Therapeutic Crisis Intervention ("TCI"). HWC and TCI competed in providing restraint training services to various agencies, organizations, and businesses.

Sometime after DFY merged with OCFS in 1998, OCFS began to withhold its approval of each facility's restraint method unless the TCI method was used. After learning of the alleged policy change at OCFS, HWC filed the instant action challenging the policy, claiming that OCFS, Cornell, and HCC conspired to monopolize the market for restraint services in violation of the antitrust laws. HWC also claimed that OCFS infringed HWC's copyright by reproducing HWC's materials in 1998 and by continuing to use them and made various state law claims. After the district court dismissed these claims, HWC appealed.

**DISCUSSION**

**I.  Legal Standard**

We review de novo the dismissal of a complaint for failure to state a claim, and accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff. Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007) (per curiam).

9

To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' Once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).

**II.  The Copyright Claim**

HWC's copyright claim against the state defendants is dependent upon the terms of the 1997 contract.  There is no dispute that DFY copied HWC's materials; the only question is whether DFY had the right to do so.  See Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998) ("A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement.").  "In interpreting a contract, the intent of the parties governs.  A contract should be construed so as to give full meaning and effect to all of its provisions."  Am. Express Bank Ltd. v. Uniroyal, Inc., 562 N.Y.S.2d 613, 614 (N.Y. App. Div. 1990) (citations omitted).  The question of whether a provision in an agreement is ambiguous is a question of law.  Collins v. Harrison-Bode, 303 F.3d 429, 433 (2d Cir. 2002).  Under New York law, the presence or absence of ambiguity is determined by looking within the four corners of the document, without

10

reference to extrinsic evidence. Kass v. Kass, 696 N.E.2d 174, 180 (N.Y. 1998). "[A]n ambiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154, 184 (2d Cir. 2003) (internal quotation marks and citation omitted).

We must decide whether the 1997 contract is ambiguous as to the duration of the license granted to copy HWC's materials. Although both parties contend that the 1997 agreement is unambiguous on its face, they draw different conclusions as to the duration of the license. HWC claims that, according to the 1997 contract's "Term of Agreement" provision, DFY's right to copy its materials ended on August 31, 1997 (120 days after the agreement commenced). The state defendants, however, contend that the 1997 contract unambiguously grants DFY a perpetual right to copy HWC's materials. The district court agreed with the state defendants. We disagree and conclude that the contract on its face is ambiguous.

The purpose of the 1997 contract is not disputed: HWC agreed to "update and recertify existing [DFY] Crisis

11

Management/Physical Restraint trainers in the techniques encompassed in the Handle With Care program." To that end, the agreement provided that HWC would perform twelve days of training to DFY trainers. The DFY trainers would then train the rest of DFY's staff in HWC's methods. Contemplating that the DFY trainers would need to utilize HWC's materials in training the rest of the Division staff, the 1997 contract acknowledged that "[DFY] has the right to reproduce all training materials."

HWC's argument that the license to copy its materials expired after 120 days conflicts with the agreement's purpose. While the 1997 contract states that the "agreement shall commence May 1, 1997 and end August 31, 1997," there is nothing in the contract that expressly indicates that this provision governs the duration of the license to copy HWC's materials. Indeed, from the four corners of the agreement, it is not at all certain that the parties intended that DFY's rights to copy HWC's materials terminate so quickly. HWC plainly knew that it was training trainers who, if they were to train the rest of DFY's staff, would need to copy HWC's materials. The provision allowing use of HWC's materials is unclear on its face as to whether it was meant to end with the agreement, or whether it was meant to continue for a reasonable period of time after the agreement

12

ended to allow for further training of DFY staff.

We are equally unpersuaded that the 1997 contract granted a perpetual license. There is no indication from the contract that the license to copy HWC's materials was meant to be perpetual. And under New York law, "[c]ontracts which are vague as to their duration generally will not be construed to provide for perpetual performance." Ketcham v. Hall Syndicate, Inc., 236 N.Y.S.2d 206, 214 (N.Y. Sup. Ct. 1962). In the absence of a clear provision, courts are reluctant to declare a perpetual license as a matter of law. See Warner-Lambert Pharm. Co. v. John J. Reynolds, Inc., 178 F. Supp. 655, 661 (S.D.N.Y. 1959), aff'd, 280 F.2d 197 (2d Cir. 1960) (per curiam). Because the contract here does not explicitly grant a perpetual license, we do not find that it did so.

After rejecting both parties' arguments and finding no plausible alternative within the four corners of the document, we conclude that the 1997 contract is ambiguous as to the duration of the license. This leaves us two choices. "We may resolve [the] ambiguity . . . if there is no extrinsic evidence to support one party's interpretation of the ambiguous language or if the extrinsic evidence is so one-sided that no reasonable factfinder could decide contrary to one party's interpretation.

13

Or, we may remand for the trial court to consider and weigh extrinsic evidence to determine what the parties intended." Collins, 303 F.3d at 433 (internal quotation marks and citation omitted). We choose the latter.

The extrinsic evidence presently in the record does not answer the question. HWC points out that when it provided retraining in 1997, it required each Division trainer to sign a contract acknowledging that his/her certification expired after one year. This evidence would support a finding that the license granted under the 1997 contract was of a more limited duration. The evidentiary record, however, is incomplete. Because further fact-finding is necessary, we remand the copyright claim to the district court for further proceedings consistent with this opinion.[2]

## III. Plaintiffs Have Failed to Define the Proper Market for Antitrust Purposes

HWC claims that OCFS, in cooperation with Cornell, has conspired to create a monopoly in the market for "training

---

[2] Because the district court did not have occasion to reach the state defendants' Eleventh Amendment immunity defenses, and because the Eleventh Amendment would not, in any event, bar suit against OCFS officials and employees sued in their official capacity for injunctive relief, Henriettta D. v. Bloomberg, 331 F.3d 261, 287 (2d Cir. 2003), we do not need to reach this issue.

14

services to private child care providers located within the State of New York" by withholding approval of supervised facilities that do not use the TCI method.  HWC alleges that HCC was complicit in this arrangement because, after HWC trained HCC's staff in 2001, HWC discovered that one of HCC's training coordinators "appeared in TCI's training manual and video illustrating" HWC's proprietary methods.

For a monopoly claim "[t]o survive a Rule 12(b)(6) motion to dismiss, an alleged product market must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes -- analysis of the interchangeability of use or the cross-elasticity of demand, and it must be plausible." Todd v. Exxon Corp., 275 F.3d 191, 200 (2d Cir. 2001) (internal quotation marks and citation omitted).  "[T]he reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it" determine "[t]he outer boundaries of a product market."  Brown Shoe Co. v. United States, 370 U.S. 294, 325 (1962).  Though "market definition is a deeply fact-intensive inquiry [and] courts [therefore] hesitate to grant motions to dismiss for failure to plead a relevant product market," Todd, 275 F.3d at 199-200, "[w]here the plaintiff fails to define its proposed relevant

market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted," Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997). Here we find that plaintiffs' proposed relevant market does not encompass all interchangeable substitute products. We therefore affirm the district court's dismissal of the antitrust claims.

HWC contends that the relevant market for our analysis here is the market for "restraint training services to private child care providers located within the State of New York." This definition is too narrow. HWC has failed to show how the market for restraint training services to child care providers is any different from the larger market for restraint training services to other businesses, agencies, and organizations. "Interchangeability implies that one product is roughly equivalent to another for the use to which it is put. . . ." Queen City, 124 F.3d at 437 (internal quotation marks and citation omitted). Plaintiffs do not contest that Handle With

16

Care is marketed to and utilized by various organizations, institutions, and agencies that are not child care providers. Indeed, plaintiffs readily admit in their complaint that they compete for such contracts on a "national and international" basis. The unifying characteristic of this market is that each purchaser needs to restrain individuals, not just children.

Because "the reasonable interchangeability of use . . . between the product itself and substitutes for it" determines "[t]he outer boundaries of a product market," it is apparent that the proper market here is the larger market for restraint training services to businesses, agencies, and organizations with the need to safely restrain individuals of all ages, not the more limited market for child restraint services. Brown Shoe, 370 U.S. at 325. As the district court noted, the larger market includes social service agencies, law enforcement agencies, correctional facilities, educational facilities, and even airlines.

Furthermore, we reject HWC's argument that because private child care providers in New York must have OCFS approval in order to operate, and thus that the market is specialized, it stated a plausible discrete relevant market. The relevant inquiry is not whether a private child care provider may reasonably use both

17

approved and non-approved OCFS methods interchangeably, but whether private child care providers in general might use such products interchangeably. See Queen City, 124 F.3d at 438. HWC's proposed relevant market "clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor." Id. at 436. We thus agree with the district court that the "Plaintiffs have not offered any theoretically reasonable explanation for restricting the product market to child care providers that require OCFS approval, or provided a sufficient factual predicate to support an inference that OCFS enjoys any substantial market power in the broader market for restraint services." Plaintiffs' proposed market is therefore legally insufficient and dismissal of the antitrust claims was appropriate.[3]

## CONCLUSION

For the foregoing reasons, the judgment below is AFFIRMED as to

---

[3] HWC argues that the district court exceeded its allowable discretion in dismissing their antitrust claims with prejudice, as opposed to allowing HWC to amend their complaint. Given the nature of the claims, repleading would be futile; HWC offers no plausible argument as to how the failure to plead a relevant market could be rectified through an amended complaint. See Patane v. Clark, 508 F.3d 106, 113 n.6 (2d Cir. 2007) (per curiam).

18

the antitrust claims and VACATED as to the copyright claim and the case is REMANDED to the district court for further proceedings consistent with this opinion.