Gary LaBARBERA and Frank Finkel Trustees of Local 282 International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation Sick Leave Trust Funds, Plaintiffs,

v.

D. & R. MATERIALS INC. d/b/a D & R Materials Inc., Defendant.

Case No. 08–CV–146 (FB)(JMA).

United States District Court, E.D. New York.

Dec. 1, 2008.

Avram H. Schreiber, Esq., New York, NY, for the Plaintiff.

## MEMORANDUM AND ORDER

BLOCK, Senior District Judge:

### I

On January 11, 2008, plaintiffs, in their capacities as fiduciaries of the Local 282 International Brotherhood of Teamsters ("Local 282") Welfare, Pension, Annuity, Job Training and Vacation Sick Leave Trust Funds ("the Funds"), filed suit against D. & R. Materials Inc. ("D & R"). Plaintiffs' complaint alleged that D & R violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, by, *inter alia*, failing to make required contributions to employee benefit plans. As a result of defendant's failure to answer or otherwise defend, *see* Docket Entry # 9 (Clerk's Entry of Default), a default judgment was entered on March 25, 2008, 2008 WL 824286, and the matter was referred to Magistrate Judge Joan M. Azrack for a determination of the relief to be awarded. *See* Docket Entry # 10 (Memorandum and Opinion).

On August 11, 2008, the magistrate judge issued a Report and Recommendation ("R & R"), *see* Docket Entry # 11, recommending that plaintiffs be awarded: (1) $1,186.06 in interest associated with late contributions from December 2006 and May–September 2007, (2) $7,618.33 in liquidated damages in connection with these late contributions, (3) $2,299.70 in attorney's fees, and (4) $477.88 in litigation costs. The R & R also recommended that plaintiffs be denied: (1) recovery of unpaid contributions from October and November 2007, (2) interest and liquidated damages in connection with these contributions, and (3) injunctive relief.

The R & R advised plaintiffs that "[a]ny objections to this Report & Recommendation must be filed with the Clerk of the Court ... within ten (10) days of the date of entry ... [,]" R & R at 15, and that "[f]ailure to file objections within the specified time waives the right to appeal the District Court's order." *Id.* at 16 (citations omitted). On August 12, 2008, plaintiffs served a copy of the R & R on defendant. *See* Docket Entry # 12 (Affidavit of Service). Plaintiffs timely filed objections to parts of the R & R, *see* Docket Entry # 13, arguing that the magistrate judge improperly denied recovery of the unpaid October–November 2007 contributions, together with associated interest and liquidated damages, and that the magistrate judge improperly reduced plaintiffs' attorney's-fee award.

### II

"[A] district court evaluating a magistrate judge's recommendation is permitted to adopt those portions of the recommendation to which no specific, written objection is made, as long as those sections are not clearly erroneous." *Greene v. WCI Holdings Corp.*, 956 F.Supp. 509, 513 (S.D.N.Y.1997) (internal quotation marks and citations omitted).

By contrast, "[s]hould either party object to the magistrate's recommendation, ... '[the district court] shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir.1989) (quoting 28 U.S.C. § 636(b)(1)(B)). Even when exercising *de novo* review, however, "[t]he district court need not ... specifically articulate its reasons for rejecting a party's objections...." *Morris v. Local 804, Int'l. Bhd. of Teamsters*, 167 Fed.Appx. 230, 232 (2d Cir.2006). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

The judge may also receive further evidence or recommit the matter to the magistrate with instructions." *Grassia,* 892 F.2d at 19 (quoting 28 U.S.C. § 636(b)(1)).

## III

The Court finds no clear error with those portions of the R & R to which plaintiffs did not object. Accordingly, the Court adopts them without *de novo* review. The Court next reviews *de novo* the two portions of the R & R to which plaintiffs objected.

### A. Denial of Relief for Unpaid October and November 2007 Contributions

█ The Trust Agreement between Local 282 and D & R ("Trust Agreement"), which is incorporated into the operative Collective Bargaining Agreement, specifies that "[d]etailed written reports shall be submitted to the Trustees [of the Funds] by [D & R] together with each monthly payment...." Trust Agreement, Art. IX § 1(c). However, because "[D & R] failed to provide the required monthly payroll reports for [October and November 2007]," the number of hours worked by covered employees, and therefore "the amount of defendant's unpaid contributions [for those months,] is unknown." R & R at 6.

As the magistrate judge observed, Article IX, § 1(e) of the Trust Agreement (" § 1(e)") provides a formula by which the Funds may calculate contributions due when D & R has failed to provide the required documentation of its employees' hours:

> In the event the Employer fails to submit the required reports and/or pertinent books and records for audit within twenty (20) days after written demand, the Trustees ... may compute the sum due for any month by adding 10 percent to the number of hours for the month in which the largest number of hours were

reported in the previous twelve (12) reports submitted by the Employer.... The total number of hours for the unreported period as determined aforesaid shall be multiplied by the current contribution rate, and the amount of contributions so computed shall be binding on the Employer and shall be deemed the amount due from the Employer for the purpose of any legal proceeding.

Plaintiffs' objection involves the proper interpretation of the first sentence of this paragraph, which states the conditions under which plaintiffs may rely on the § 1(e) formula to compute unpaid contributions. As indicated by the use of "and/or," there are clearly two independent preconditions—one involving the failure to submit "the required reports," and one involving the failure to submit "pertinent books and records." However, the syntax of this sentence admits of two interpretations, due to the potentially ambiguous scope of the phrase "for audit within twenty (20) days after written demand"—specifically, whether this phrase modifies *both* the phrase "required reports" *and* the phrase "pertinent books and records," or solely the latter one. Thus, both of these constructions of the sentence at issue are linguistically tenable:

(1) In the event the Employer either (a) fails to submit the required [monthly hours-worked] reports, or (b) fails to submit the pertinent books and records *for audit within 20 days after written demand.* ...

(2) In the event the Employer fails to submit *for audit within 20 days after written demand,* either (a) the required [monthly hours-worked reports], or (b) the pertinent books and records....

The magistrate judge evidently adopted construction (2). In other words, as the

magistrate judge construed § 1(e), *both* the "required reports" precondition and the "pertinent books and records" precondition require a written audit demand that goes unanswered. *See* R & R at 6–7 ("In the absence of defendant's noncompliance with a written request for an audit, § 1(e) of the Trust Agreement is not triggered and remains inapplicable."). Although D & R failed to submit the required monthly payroll reports for October and November 2007, plaintiffs had *not* alleged that they had made a written audit demand that went unanswered. Consequently, the magistrate judge "reject[ed] the plaintiffs' use of § 1(e) to calculate contributions owed by D & R for the months October and November 2007." *Id.* at 6.

■ The Court disagrees with the magistrate judge's construction of the provision at issue. Reading the Trust Agreement as a coherent whole, *see Postlewaite v. McGraw–Hill, Inc.,* 411 F.3d 63, 67 (2d Cir.2005) ("Contracts must be read as a whole ...."), the Court finds that the phrase "for audit within twenty (20) days after written demand" modifies *only* the "pertinent books and records" precondition, and *not* the "required reports" precondition. In other words, the Court adopts the construction labeled (1) above.[1]

First of all, as mentioned previously, § 1(c) of the Trust Agreement provides that payroll "reports *shall* be submitted ... together with each monthly payment ..." (emphasis added). Thus, § 1(c) establishes D & R's *mandatory* duty to provide the "required reports" that are mentioned later in the disputed § 1(e); this

recurring obligation is unvarying and does not depend upon any request or demand on plaintiffs' part. Notably, this section contains no mention of an "audit." The following section of the Trust Agreement, § 1(d), provides that "[t]he Trustees *may at any time* audit the pertinent books and records of [the] Employer ..." (emphasis added). Thus, § 1(d) establishes D & R's *conditional* duty to provide "pertinent books and records" for "audit"—but only upon plaintiff's demand. This duty likewise resurfaces in the disputed § 1(e). Consequently, in interpreting § 1(e), it would best harmonize with these earlier sections to construe the phrase "for audit within twenty (20) days after written demand" as connected *only* to the phrase "pertinent books and records," and *not* the phrase "required reports."

The Court's conclusion is bolstered by the subsequent § 1(f) of the Trust Agreement, which provides that "[i]n the event the Employer submits the required ... *reports*, but thereafter ... fails to submit the *pertinent books and records for audit within 20 days after written demand,* such failure shall be a material breach of the Trust Agreement." (emphasis added). In this provision, it is unmistakably clear that the phrase "for audit within 20 days after written demand" modifies *only* the term "pertinent books and records," and *not* the term "required ... reports," which appears in a grammatically independent clause. In light of § 1(f), consistency demands that the identical phrase "for audit within twenty (20) days after written demand" in the disputed § 1(e) be construed

---

1. Although the first sentence of § 1(e) may be ambiguous *in isolation,* the Court is not required to consider extrinsic evidence beyond the four corners of the contract where, as here, any ambiguity is resolved by examining the instrument as a whole. *See Chapman v. New York State Div. for Youth,* 546 F.3d 230, 236 (2d Cir.2008) ("[T]he presence or absence

of ambiguity is determined by looking within the four corners of the document, without reference to extrinsic evidence. [A]n ambiguity exists where a contract term could suggest more than one meaning when viewed objectively ... [in] the context of the entire integrated agreement ...." (internal quotation marks and citations omitted)).

as modifying *only* "pertinent books and records," and *not* "required reports."

Under the construction which the Court adopts, an unanswered audit demand is a necessary precondition to the use of the § 1(e) formula *only* where D & R has failed to provide "pertinent books and records," *not* where, as here, D & R has failed to comply with its mandatory duty to provide monthly payroll reports. Consequently, the Court concludes that the magistrate judge erred by denying plaintiffs recovery for the unpaid October and November 2007 contributions. Furthermore, because the magistrate judge's denial of interest and liquidated damages in connection with these October and November 2007 contributions resulted directly from the denial of recovery for the contributions themselves, *see* R & R at 7, this too was error.

## B. Reduction of Attorney's Fees

### 1. *Reduction of Hourly Rates*

■ Plaintiffs sought the following attorney's fees:

(1) Avram Schreiber (partner): 0.6 hrs. @ $300/hr.; 0.2 hrs. @ $80/hr.;

(2) Woomee Lee (associate): 17.7 hrs. @ $225/hr.; 12.2 hrs. @ $80/hr.;[2]

(3) Denise Dees (paralegal): 3.3 hrs. @ $80/hr.

Applying the standard set forth in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182 (2d Cir.2008), which requires a district court to determine what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively ... would be willing to pay," *id.* at 184, the magistrate judge determined the hourly rates sought by plaintiffs were unreasonable. *See* R & R at 11.[3] The magistrate judge found, *inter alia*, that this case (a) "dealt with no novel or complex issues of law"; (b) "was unopposed"; and (c) was "one of many pending ERISA cases in this District in which Schreiber represents the instant plaintiffs" which are "thoroughly routine." *Id.* at 11–12.

As support, the magistrate judge cited another recent ERISA default-judgment case in which Schreiber and his firm had represented these plaintiffs, noting that the court had awarded Schreiber only $275/hour, that the court had awarded the "junior attorney" working with Schreiber $125/hour for *all* tasks, and that the court had awarded Dees only $70/hour. *See* R & R at 11 (citing *LaBarbera v. J & A Concrete Corp.*, No. 07–CV–1731 (DLI)(JO), 2008 WL 918244 (E.D.N.Y. Apr. 1, 2008)). In light of this, the magistrate judge recommended reducing Schreiber's higher billing rate to $275/hour, while leaving his

**2.** The magistrate judge "infer[red] ... that the discounted billing rates [for Schreiber and Lee] represent routine administrative tasks which require less experience and skill" than the tasks for which Schreiber and Lee billed at their higher rates. R & R at 11. Plaintiffs do not dispute this inference.

**3.** The factors a district court may consider in making this determination includ[e], but [are] not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (tak-

ing account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation.
*Arbor Hill*, 522 F.3d at 184.

lower rate the same; collapsing Lee's higher and lower rates into a single intermediate rate of $125/hour; and reducing Dees's rate to $70/hour.

Plaintiffs do not object to the reduction in Schreiber's or Dees's hourly rates. However, plaintiffs object to Magistrate Judge Azrack's reduction of Lee's higher rate from $225/hour to $125/hour, noting that on two separate occasions, Magistrate Judge Azrack herself has approved $200/hour as a "reasonable" rate for Lee in a case of this variety. *See* Pls.' Objections to R & R at 5 (citing *LaBarbera v. Ingoe Rock Indus., Inc.,* 06–CV–1026(FB)(JMA), at 9, 2006 WL 2829006 (E.D.N.Y. Aug. 29, 2006); *LaBarbera v. Andrew's Trucking Corp., Inc.,* 06–CV6243(NG)(JMA), at 8 (E.D.N.Y. Aug. 6, 2007)). In the meantime, plaintiffs argue, Lee has gained additional experience, so her "reasonable" hourly rate could not be *less* than it was two years ago.

◼ Plaintiffs are correct that, in general, an attorney's "reasonable" hourly rate should increase, not decrease, as she gains experience. *See Arbor Hill,* 522 F.3d at 186 n. 3 (listing "the experience . . . of the attorney[ ]" as a relevant factor in determining a reasonable fee) (citation omitted). However, the Court is of the opinion that the prior awards of $200/hour for Lee's time were unreasonable when they were made.[4]

◼ A court may rely upon attorney's-fee awards approved in comparable cases, as well as its own knowledge of current market rates, in deciding what qualifies as a "reasonable" attorney's fee in the relevant community. *See Luciano v. Olsten Corp.,* 109 F.3d 111, 115 (2d Cir.1997).

Lee was admitted to the bar in 2004, *see* R & R at 12; thus, she was a junior associate with approximately two years of experience at the time of *Ingoe Rock,* and three years of experience at the time of *Andrew's Trucking.* An examination of recent cases in this district indicates that attorney's-fee awards for junior associates typically range from $100 to $150 per hour. *See, e.g., Cho v. Koam Med. Servs. P.C.,* 524 F.Supp.2d 202, 207 (E.D.N.Y.2007) ("Overall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from . . . $100 to $150 for junior associates. . . ."); *Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.,* No. 07–CV–656 (FB)(KAM), 2007 WL 4324019, at *6 (E.D.N.Y. Dec. 7, 2007) (making same observation); *Chinatrust Bank (U.S.A.) v. Pinter,* No. 04–CV–5331 (SLT)(KAM), 2008 WL 2987152, at *2 (E.D.N.Y. July 31, 2008) (making same observation, and reducing fee award for junior associates at a large, prominent law firm to $150/hour); *Trustees of Plumbers Local Union No. 1 Welfare Fund v. Dan Yant, Inc.,* No. 06 CV 173(SJ)(JO), 2007 WL 3036759, at *9 (E.D.N.Y. Oct. 16, 2007) (making same observation, and reducing fee award for third-year associate from $160/hour to $125/hour); *cf. Trustees of Local 531 Pension Plan v. Corner Distribs., Inc.,* No. 07–CV–529 (ARR)(MDG), 2008 WL 2687085, at *8 (E.D.N.Y. July 8, 2008) (awarding $200/hour to a *seventh-year* associate in an ERISA case).

◼ Thus, the prior awards of $200/hour to Lee in *Ingoe Rock* and *Andrew's Trucking* were well outside the mainstream. That an excessive award has been

---

4. While the district court approved Magistrate Judge Azrack's fee awards in *Ingoe Rock* and *Andrews Trucking,* in neither case did the district court review the magistrate judge's attorney's-fee recommendation *de novo.* Thus, the district court's adoption of those fee recommendations merely signifies that the district court did not find them clearly erroneous *on their face.*

approved in the past does not bind a subsequent district court performing *de novo* "reasonableness" review to that prior determination. *See LaBarbera v. Abbey Tool & Indus. Supply Co.,* No. 07–CV–3114 (NGG)(JO), 2008 WL 4198546, at *7 (E.D.N.Y. Sept. 5, 2008) ("I recognize that the Trustees have previously succeeded in requesting ... an hourly rate of $250 for the same attorney who represents them in this case.... [However,] in light of *Arbor Hill* ..., past practice is no longer a sufficient basis for requiring a defendant to subsidize the plaintiffs' choice of counsel who charges more than other similarly situated attorneys in this district....").

The inappropriateness of a higher-than-usual fee award is especially evident when considering—as the magistrate judge properly did—that this is a run-of-the-mill, unopposed ERISA case. *See Cho,* 524 F.Supp.2d at 208 ("[T]his case was relatively simple—all but one defendant defaulted and the FLSA and New York Labor Law are both straightforward. In light of [this], the level of compensation sought is well out of line with reasonable rates ... prevailing in this district for matters of a similar stripe."); *Alveranga v. Winston,* No. 04–CV–4356 (ARR)(CLP), 2007 WL 595069, at *7 (E.D.N.Y. Feb. 22, 2007) (noting that "[r]ates awarded ... in cases not involving complex issues tend, on average, to be lower"). Thus, for the same reasons cited by the magistrate judge, the Court finds that $125/hour is reasonable compensation for Lee's time in this case.[5]

## 2. *Reduction of Hours Billed*

■ The magistrate judge found that the total number of hours plaintiffs' counsel claim to have worked on this case—

34.1—was excessive, considering that (1) defendant is in default and plaintiffs' motion is undisputed; (2) the docket indicates that "the activities of the case ... were simple and few[,]" (3) "no novel or complex issues of law were implicated"; (4) counsel have brought a large number of exceedingly similar ERISA cases in this district; (5) "many entries in the billing records appear duplicative and/or unnecessary"; and (6) "plaintiffs' submissions ... are largely boilerplate." R & R at 13. In light of these facts, the magistrate judge recommended a 45% across-the-board reduction in hours. *Id.* at 13 (citing *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 226, 237 (2d Cir.1987) (approving across-the-board percentage reduction where fee application is voluminous)).

Plaintiffs object on the grounds that "[t]he applications are not boilerplate" and that "each [default judgment] application is different, based on the particular set of facts." Pls.' Objections to R & R at 5–6. Having dealt with numerous ERISA default-judgment cases of this variety, the Court agrees with the magistrate judge's characterization of this case. Indeed, based on the Court's examination of the Eastern District of New York's electronic-case-filing database, it appears that plaintiffs' lead counsel, Avram Schreiber, has represented the trustees of the Funds in dozens of cases in this district, dating back as far as 2002, many or most of which involve default judgments and are largely indistinguishable from the present case. Accordingly, the Court adopts the magistrate judge's recommended 45% reduction. *Cf. Century 21 Real Estate, LLC v. Raritan Bay Realty, Ltd.,* No. CV–07–1455 (CPS), 2008 WL 4190955, at *11 (E.D.N.Y.

---

**5.** Plaintiffs, the Court notes, do not acknowledge that the magistrate judge's reduction of Lee's *higher* hourly rate from $225/hour to $125/hour was accompanied by a corresponding *increase* in Lee's *lower* hourly rate (billed for routine tasks) from $85/hour to $125/hour. In light of this, plaintiffs' objection has even less force.

Sept. 3, 2008) (reducing overall hours by 40% where "the firm representing [default-judgment plaintiff] has previously litigated at least one nearly identical case in this district on its behalf, and should have benefitted from at least some time savings as a result").

## CONCLUSION

Plaintiff's objection relating to the denial of recovery for the unpaid October and November 2007 contributions, as well as associated interest and liquidated damages, is granted. Plaintiffs' objections relating to attorney's fees are denied. The Court recommits this case to Magistrate Judge Azrack for a determination of relief in accordance with this Memorandum and Order.

In closing, the Court notes that in their objections to the R & R, plaintiffs claim that "the Defendant [did] submit the actual reports for October and November 2007 . . . [after] the request for the default judgment was filed." Pls.' Objections to R & R at 4. Understandably, this late-breaking fact was not reflected in the magistrate judge's analysis. Thus, in making her determination, the magistrate judge should consider the effect of these changed circumstances, if any, on the amount of the award.

**SO ORDERED.**