■ CONTINENTAL GUEST SERVICES CORPORATION, Appellant, v INTERNATIONAL BUS SERVICES, INC., et al., Respondents, et al., Defendants. [939 NYS2d 30]—

Until the spring of 2009, defendant IBS and defendant City Sights operated competing double-decker sightseeing tour buses in New York City. However, they subsequently formed Twin America, which controls 90% of the double-decker sightseeing tour bus market in New York City;[1] the only competitor was nonparty Big Taxi Tours. According to the complaint, plaintiff is the largest operator of hotel concierge desks in New York City and the largest single source of ticket sales for double-decker sightseeing bus tours in the City.

Prior to commencement of this litigation, plaintiff had oper-

---

**1.** On February 8, 2011, the United States Surface Transportation Board (STB) denied approval of the Twin America joint venture. On March 8, 2011, the STB stayed its February 8 decision pending defendants' petition for reconsideration.

ated concierge desks at 43 New York City hotels, pursuant to written agreements with these hotels. The hotel concierge desks provide a range of services including flowers, car rentals, and, as relevant to this appeal, tickets to sightseeing tours including double-decker bus tours. Specifically, plaintiff sells vouchers for defendants' double-decker bus tours, and customers submit the vouchers to defendants in exchange for a ticket to board the bus. Plaintiff subsequently remits the voucher payments to defendants within a specified number of days, minus an agreed upon commission percentage.

After the formation of Twin America, defendants reduced plaintiff's commission and the amount of time plaintiff had to remit payment. Plaintiff alleges that when it refused to sell a 49% interest in its company to defendants, defendants advised plaintiff that they would "force [p]laintiff out" so defendants could control the hotel concierge desks.[2]

Plaintiff's complaint alleges monopolization, and attempted monopolization, of both the Tour Bus Market and the Ticket Sales Market. Plaintiff defines the Tour Bus Market as the market for hop-on, hop-off double-decker sightseeing bus tours in New York City, and the Ticket Sales Market as the "hotel concierge desk distribution channel for the sale of tickets to passengers for the double-decker sightseeing tours in New York City." Plaintiff contends that IBS and City Sights conspired to form Twin America, with the intent to control, dominate and curtail competition in the Tour Bus Market. Plaintiff also alleges that defendants conspired to monopolize the Ticket Sales Market by vertically controlling distribution of their tickets, "taking over" hotel concierge desks previously operated by plaintiff, and reducing plaintiff's commission percentage and time to remit payment.

The motion court properly dismissed the antitrust claims for failure to state a cause of action.[3] Although the motion court found that plaintiff had standing as to the Tour Bus Market claims, that aspect of the ruling is incorrect. Plaintiff is neither a consumer nor a competitor in the Tour Bus Market because it does not operate bus tours. Plaintiff's allegations that defend-

---

**2.** Although 11 hotels initially terminated their contracts with plaintiff and gave business to defendants, four of these hotels subsequently reinstated plaintiff as the hotel concierge desk operator.

**3.** The motion court also determined that defendants were one entity after the creation of Twin America and therefore plaintiff had failed to allege a conspiracy between two or more legal or economic entities. However, it does not matter, for purposes of this decision, whether or not the motion court erred in finding that defendants had become a single entity because plaintiff's claims fail on other grounds.

ants increased their ticket price and that the quality of the tours has decreased are injuries that can be vindicated by tour bus passengers and/or the Attorney General. This consideration "diminishes the justification for allowing a more remote party such as [plaintiff] to perform the office of a private attorney general" (see Associated Gen. Contractors of Cal., Inc. v Carpenters, 459 US 519, 542 [1983]).

Plaintiff's claims with respect to the Ticket Sales Market were correctly dismissed because plaintiff failed to define a relevant product market. A relevant product market includes all products that are "reasonably interchangeable," and the alleged market must be plausible (Theatre Party Assoc., Inc. v Shubert Org., Inc., 695 F Supp 150, 154 [SD NY 1988]). The general rule when determining a relevant product market is that "[t]he outer boundaries of a product market are determined by the reasonable interchangeability of use [by consumers] or the cross-elasticity of demand between the product itself and substitutes for it" (F.T.C. v Staples, Inc., 970 F Supp 1066, 1074 [DDC 1997] [internal quotation marks omitted]). Interchangeability and cross-elasticity of demand look to the availability of substitute commodities, meaning, "whether two products can be used for the same purpose, and if so, whether and to what extent purchasers are willing to substitute one for the other" (id. [internal quotation marks omitted]). If there are other products available to consumers that are similar in character or use to the products in question, then the products are said to be functionally interchangeable and form the outer boundaries of a relevant product market for antitrust purposes.

Here, according to plaintiff, the market for ticket sales for double-decker bus tours through hotel concierge desks is distinct from the market for ticket sales for the same double-decker bus tours that are available through other vendors and distribution channels. Although plaintiff contends it is the "major distribution channel" of defendants' tickets, it is not the only distribution channel because consumers can purchase tickets from street vendors, the Internet, and visitor centers operated by defendants. Thus, there is functional interchangeability between the hotel concierge desk distribution channel and other distribution channels and vendors. Plaintiff's isolation of a supposed separate market via hotel concierge desks from the other vendors is too narrow a definition to constitute a plausible market (Belfiore v New York Times Co., 826 F2d 177, 180 [2d Cir 1987], cert denied 484 US 1067 [1988]).

Furthermore, the hotel concierge desk distribution channel does not constitute a submarket within the larger double-decker

tour bus ticket sales market. Courts recognize that submarkets can exist within larger product markets, thereby providing potential plaintiffs with another avenue of establishing a relevant product market for an antitrust claim. The United States Supreme Court in *Brown Shoe Co. v United States* (370 US 294, 325 [1962]) provided a series of factors for determining whether a submarket exists, including "industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, . . . [and] distinct prices." In this case, the tickets sold by plaintiff do not have any peculiar characteristics, but rather provide the consumer with the same product and experience as a ticket purchased through any of the other distribution channels. Moreover, plaintiff does not allege that either the hotel concierge industry or the double-decker tour bus industry recognizes plaintiff's defined submarket as a separate economic entity. Indeed, plaintiff does not set the price for the double-decker tour bus tickets; it is solely a distributor of vouchers for defendants' product.

Even if the Ticket Sales Market were a relevant product market or submarket, plaintiff failed to allege an antitrust injury in that market. An antitrust injury is an injury "attributable to an anti-competitive aspect of the practice under scrutiny" (*Atlantic Richfield Co. v USA Petroleum Co.*, 495 US 328, 334 [1990]). Here, plaintiff complains that defendants have replaced it as the concierge at 11 of the 43 hotels where it used to operate the concierge desk, that defendants plan to take over the hotel concierge industry, and in so doing, defendants have decreased plaintiff's commission and the amount of time plaintiff has to remit payment. However, in the hotel concierge industry, plaintiff and defendants are now competitors, and the antitrust laws were enacted to protect competition, not competitors (*see Theatre Party*, 695 F Supp at 155). Plaintiff does not allege that defendants have prevented it from selling vouchers at concierge desks it continues to operate.

Furthermore, the antitrust laws do not require defendants to pay plaintiff a particular commission or give it a certain number of days to pay (*see Belfiore v New York Times Co.*, 654 F Supp 842, 847 [D Conn 1986], *affd* 826 F2d 177 [2d Cir 1987], *cert denied* 484 US 1067 [1988]). In fact, defendants may decline to deal with plaintiff altogether (*see Theatre Party*, 695 F Supp at 155; *see also E & L Consulting, Ltd. v Doman Indus. Ltd.*, 472 F3d 23, 29 [2d Cir 2006], *cert denied* 552 US 816 [2007]).

Indeed, a manufacturer's vertical control of the distribution of its own product is presumptively legal and not a violation of the antitrust laws (*E & L Consulting*, 472 F3d at 30). The grava-

men of plaintiff's argument is that defendants are distributing their double-decker tour tickets themselves, instead of using plaintiff's services. However, "[i]t is not a violation of the antitrust laws, without a showing of actual adverse effect on competition market-wide, for a manufacturer to terminate a distributor" (*id.* at 29 [internal quotation marks omitted]). Notably, defendants' vertical control of their product does not provide any monopolistic benefit that defendants do not already enjoy.

The motion court properly dismissed plaintiff's attempted monopolization claims. Although the motion court found that plaintiff could not bring a private right of action for attempted monopolization, that portion of the ruling is incorrect.[4] Plaintiff's claims of attempted monopolization fail because plaintiff does not have standing in the Tour Bus Market, and plaintiff has not alleged anticompetitive conduct by defendants or a "dangerous probability" that the attempted monopolization will succeed in the Ticket Sales Market (*International Distrib. Ctrs., Inc. v Walsh Trucking Co., Inc.,* 812 F2d 786, 791 [2d Cir 1987], *cert denied* 482 US 915 [1987]). The complaint alleges that defendants have taken over some of plaintiff's hotel concierge desks. However, the seven hotels that terminated plaintiff's contract were able to do so without alleging cause and were free to hire any replacement company to operate the concierge desks. Just because defendants are now in competition with plaintiff in the hotel concierge desk industry does not mean that they engaged in anticompetitive conduct.

To establish a "dangerous probability" of success we must examine whether a defendant "possesses a significant market share when it undertakes the challenged anticompetitive conduct" (*Intl. Distrib.,* 812 F2d at 791). Here, the minimal economic power defendants may have in the hotel concierge industry does not warrant the conclusion that they possessed a significant market share at the time plaintiff alleges they engaged in the anticompetitive actions. Defendants now operate seven hotel concierge desks in New York City, however, according to the complaint, plaintiff remains the "largest operator of hotel concierge desks in New York City." Further, plaintiff's conclusory allegations that defendants will eventually "take over each and every hotel concierge desk in New York City" and

---

4. In *Two Queens v Scoza* (296 AD2d 302 [2002]), this Court reinstated the defendant's counterclaims, which included an allegation of attempted monopolization. It is a fair inference that the *Two Queens* Court found that the Donnelly Act provided for a private right of action for attempted monopolization.

thereby put plaintiff out of business is legally insufficient to make out a violation of the Donnelly Act (*Sands v Ticketmaster-N.Y., Inc.*, 207 AD2d 687, 688 [1994], *lv denied* 85 NY2d 904 [1995]).

The motion court properly declined to permit plaintiff to re-plead its antitrust claims because no amount of repleading will change the nature of its injuries (*see Chapman v New York State Div. for Youth*, 546 F3d 230, 239 n 3 [2d Cir 2008], *cert denied sub nom. Handle With Care Behavior Management System, Inc. v New York State Division for Youth*, 558 US —, 130 S Ct 552 [2009]).

We have considered the parties' remaining contentions and find them unavailing. Concur—Tom, J.P., Moskowitz, Richter, Abdus-Salaam and Román, JJ.