[823 NYS2d 79]

Benjamin of Forest Hills Realty, Inc., Respondent, v Austin Sheppard Realty, Inc., et al., Appellants.

Second Department, September 19, 2006

APPEARANCES OF COUNSEL

*Allen H. Weiss*, Lake Success, for Austin Sheppard Realty, Inc., appellant.

*Milber Makris Plousadis & Seiden, LLP*, White Plains (*Andrew F. Pisanelli* and *Lorin A. Donnelly* of counsel), for Alan Shapiro and others, appellants.

*Moshell & Moshell*, Jericho (*Jonathan B. Schwartzman* of counsel), for respondent.

## OPINION OF THE COURT

Santucci, J.

In this case we are called upon to decide whether the practice of a cooperative building which, in effect, allows purchases of its shares only through one specific real estate broker, constitutes a violation of General Business Law § 340 *et seq.* Under the circumstances of this case, we conclude that it does not.

The plaintiff Benjamin of Forest Hills Realty, Inc., and the defendant Austin Sheppard Realty, Inc. (hereinafter Austin Sheppard), are licensed real estate brokers located in Forest Hills, Queens. The defendant 108-46 70th Road Owners, Inc., is a cooperative corporation (hereinafter the co-op), which owns a building located at that address in Forest Hills. The defendant Alan Shapiro is a licensed real estate broker and the sole shareholder of Austin Sheppard. Shapiro also is a shareholder, a member of the Board of Directors, and an officer of the co-op.

In December 1998 the plaintiff commenced this lawsuit asserting two causes of action: (1) tortious interference with a contract for real estate brokerage commissions, and (2) interference with the plaintiff's free exercise of trade and marketing in violation of General Business Law § 340 *et seq.* (commonly referred to as the Donnelly Act). The complaint alleged, inter alia, that on each occasion that the plaintiff had obtained prospective purchasers of co-op shares, he was advised that the proposed purchaser would not be approved by the co-op board unless Shapiro/Austin Sheppard was the real estate broker for the transaction.

With respect to the Donnelly Act cause of action, the plaintiff alleged:

> "On or about December 10, 1997, defendants, Shapiro, Austin Sheppard, Centre, [and members of the co-op's Board of Directors] conspired to prevent submission of [an] application for approval of the sale of [co-op] shares . . .

> "Said defendants' actions and failure to act unlawfully [sic] interfered with Plaintiff's free exercise of trade and marketing in the State of New York in violation of § 340 of the General Business Law . . .

> "Said defendants have on numerous other occasions conspired to prevent the submission of a prospective purchaser of co-op shares for approval by the co-op Board. As a result of the actions and inactions of said Defendants in restraint of Plaintiff's trade and business, Plaintiff suffered damages."

After joinder of issue, the defendants moved for summary judgment arguing, inter alia, that the plaintiff's "conclusory allegations . . . are legally insufficient to make out a violation of [General Business Law § 340], and compel a dismissal of said cause of action." However, the Supreme Court concluded that there was "sufficient evidence in the record to create an issue of fact concerning whether [the defendants] conspired to limit the sales of co-op units to those sales arranged by [Austin Sheppard]."

The record before us demonstrates that sales of the co-op's units were routinely approved when Austin Sheppard acted as the real estate broker. Indeed, the application package, which prospective buyers were required to complete as part of their purchase, was obtained from Shapiro and printed under Austin Sheppard's letterhead. Moreover, the applications were divided into "outside sales," involving brokers other than Austin Sheppard, and "inside sales," which were sales brokered only through Austin Sheppard. There is also evidence which suggests that the co-op board has never rejected an application submitted by Austin Sheppard, and that no approval has ever been forthcoming for an application which was not submitted by Austin Sheppard. Nevertheless, while such evidence indicates that the defendants had an arrangement which, in effect, made Austin Sheppard the only real estate broker which could sell co-op shares in the subject building, this does not necessarily constitute a violation of the Donnelly Act.

General Business Law § 340 provides, in pertinent part, as follows:

> "1. Every contract, agreement, arrangement or combination whereby . . . Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained . . . is hereby declared to be against public policy, illegal and void."

The Donnelly Act is generally construed in accordance with the federal law known as the Sherman Act (*see Re-Alco Indus., Inc. v National Ctr. for Health Educ., Inc.,* 812 F Supp 387 [1993]). The Sherman Act (15 USC § 1) and the Donnelly Act require identical basic elements of proof for claims of monopolization or attempt to monopolize, and, in fact, the Donnelly Act was modeled on the Sherman Act (*see State of New York v Mobil Oil Corp.,* 38 NY2d 460 [1976]).

To state a claim under the Donnelly Act, a party must: (1) identify the relevant product market, (2) describe the nature and effects of the purported conspiracy, (3) allege how the economic impact of that conspiracy is to restrain trade in the market in question, and (4) show a conspiracy or reciprocal relationship between two or more entities (*see Altman v Bayer Corp.,* 125 F Supp 2d 666 [2000]; *Great Atl. & Pac. Tea Co., Inc. v Town of E. Hampton,* 997 F Supp 340 [1998]; *see also Newsday, Inc. v Fantastic Mind,* 237 AD2d 497 [1997]; *Bello v Cablevision Sys. Corp.,* 185 AD2d 262 [1992]; *Creative Trading Co. v Larkin-Pluznick-Larkin, Inc.,* 136 AD2d 461 [1988], *revd* 75 NY2d 830 [1990]). Merely claiming or even proving a form of monopoly does not demonstrate violation of the statute without concomitant establishment of the relevant market factors.

In *Shepard Indus., Inc. v 135 E. 57th St., LLC* (1999 WL 728641, *2, 1999 US Dist LEXIS 14431, *5-6 [SD NY, Sept. 17, 1999]), the plaintiff was a cleaning and maintenance company which had provided services to the defendant building and various tenants therein. After the building's new owner and managing agent terminated the plaintiff's services for the building, and engaged in practices which made it prohibitive for individual tenants to retain the plaintiff for supplemental maintenance services, the plaintiff commenced an action and asserted a violation of the Donnelly Act. The plaintiff alleged, inter alia, that it could not perform work in the building on a competitive basis as a result of the defendants' acts. In measuring the allegations

against the defendants' motion to dismiss pursuant to rule 12 (b) (6) of the Federal Rules of Civil Procedure, the court concluded that the plaintiff's failure to allege a relevant geographic market was fatal to its claim, reasoning as follows:

> "The first step in a court's analysis must be a definition of the relevant markets . . . because [w]ithout a definition of that market, there is no way to measure [a defendant's] ability to lessen or destroy competition . . . For antitrust purposes, a relevant market consists of both a product market—those commodities or services that are reasonably interchangeable, and a geographic market—the area in which such reasonable interchangeability occurs. *Pyramid Co. of Rockland v. Mautner,* 153 Misc.2d 458, 463 (N.Y. Sup. 1992) (citing *Brown Shoe Co. v. United States,* 370 U.S. 294 [1962]). The plaintiff must explain why the market it alleges is in fact the relevant, economically significant product market. *Re-Alco,* 812 F.Supp. at 391 . . . Plaintiff's definition of the geographic market at issue—the Building—is patently under-inclusive. The building at 135 East 57th Street presumably is not the only building in New York City, much less the only building on that street, to benefit from cleaning services provided by Plaintiff or its competitors . . . Furthermore, Plaintiff alleges no facts in support of its claim that the single building in question constitutes a relevant geographic market for antitrust purposes . . . Plaintiff's failure to allege a geographic market and a product market is thus fatal to its Donnelly Act claim." (*Shepard Indus., Inc. v 135 E. 57th St., LLC,* 1999 WL 728641, *3-4, 1999 US Dist LEXIS 14431, *9-14 [internal quotation marks omitted].)

A New York County case, *Simon & Son Upholstery v 601 W. Assoc.* (2003 NY Slip Op 51281[U], *3 [Sup Ct, NY County 2003]), followed *Shepard Indus.,* holding, "[p]laintiffs have not sufficiently alleged a relevant geographic market for purposes of the Donnelly Act. *A single building cannot constitute a relevant geographic market under the Donnelly Act"* (emphasis added).

In *Lopresti v Massachusetts Mut. Life Ins. Co.* (5 Misc 3d 1006[A], 2004 NY Slip Op 51223[U] [2004], *affd* 30 AD3d 474 [2d Dept 2006]), the Supreme Court rejected the plaintiff annuity insurance salesman's claim that the defendants' determination to disallow their employees' participation in retirement

plans run by certain insurers, including the plaintiff, violated the Donnelly Act. In pertinent part, the court explained as follows:

"[I]dentification of a relevant market 'must include all products that are reasonably interchangeable and all geographic areas in which such reasonable interchangeability occurs' (*Pyramid Co. of Rockland v Mautner,* 153 Misc2d 458, 463 [1992]). However, plaintiff, in his complaint, alleges the relevant market to be the retirement annuity market at Wyckoff [Heights Medical Center]. His description of the relevant market is patently under-inclusive. Plaintiff's business encompasses a much wider geographic area than Wyckoff alone, and he fails to include all relevant geographic areas in his alleged market. Moreover, 'a single building cannot constitute a relevant geographic market under the Donnelly Act' (*Simon & Son Upholstery v 601 W. Assocs. LLC,* 2003 WL 22231540, \*4 [Sup Ct, NY County 2003]), and, thus, a single hospital, such as Wyckoff, cannot properly be considered large enough to constitute a relevant geographic market for purposes of the Donnelly Act (*see Brader v Allegheny General Hosp.,* 64 F 3d 869, 877-878 [3d Cir 1995])." (*Lopresti v Massachusetts Mut. Life Ins. Co.,* 2004 NY Slip Op 51223[U], \*3.)

On appeal, this Court affirmed, noting that "the complaint failed to identify a relevant market, or an injury to competition cognizable under the statute" (*LoPresti v Massachusetts Mut. Life Ins. Co.,* 30 AD3d at 475; *see Watts v Clark Assoc. Funeral Home,* 234 AD2d 538, 538 [1996] ["the plaintiff's contention that he was precluded from purchasing an interest in one of the few existing funeral parlor businesses within Northern Westchester County does not adequately allege impairment of competition within a relevant market or show how the economic impact of the alleged conspiracy restrains trade in the market"]; *Constant v Hallmark Cards,* 172 AD2d 641, 642 [1991] [Donnelly Act claim based on franchisor's refusal to approve franchisee's sale of interest in store properly dismissed because "plaintiffs have not only failed to show how the economic impact of the alleged conspiracy restrains trade in the market . . . but have also failed to adequately allege impairment of competition in a relevant market"]; *Van Dussen-Storto Motor Inn v Rochester Tel. Corp.,* 63 AD2d 244, 252 [1978]).

In the case at bar, the plaintiff identifies the relevant product market as "the selling and buying of shares in defendant 108-46 70th Road Owners, Inc., and the representation of buyers and sellers by real estate brokers." As indicated, a relevant product market must include all products that are reasonably inter-changeable and *all geographic areas* in which such reasonable interchangeability occurs (*see Pyramid Co. of Rockland v Maut-ner, supra*). Here, the plaintiff acknowledges that its business encompasses a much wider geographic area than the one subject co-op building. Nevertheless, the alleged Donnelly Act violation arose out of the sale of co-op units in this one particular build-ing. Therefore, inasmuch as the plaintiff's real estate business did not solely concern units in the subject building, its identifica-tion of the relevant market as only this particular building is "patently under-inclusive" (*Shepard Indus., Inc. v 135 E. 57th St., LLC,* 1999 WL 728641, *4, 1999 US Dist LEXIS 14431, *12). Accordingly, the plaintiff cannot establish impairment of competition in a relevant geographic market sufficient to sup-port its claim of a Donnelly Act violation (*see LoPresti v Mas-sachusetts Mut. Life Ins. Co., supra*).

Nor has it been demonstrated how the alleged restrictions imposed by the co-op constitute an unreasonable restraint on trade, or impair competition in the local real estate market as a whole, as opposed to simply having a claimed adverse effect upon the plaintiff alone. While the plaintiff may have been deprived of certain brokerage commissions as a result of the co-op's practice, these losses are clearly not tantamount to injury to competition in the market as a whole and thus do not consti-tute a cognizable claim under the Donnelly Act (*see Beyer Farms, Inc. v Elmhurst Dairy, Inc.,* 142 F Supp 2d 296, 304 [2001]; *Korshin v Benedictine Hosp.,* 34 F Supp 2d 133, 137-138 [1999]). In any event, a company has a right "to select a person with whom it does business and to refuse to deal or continue to deal with anyone for reasons sufficient to itself" (*Hsing Chow v Union Cent. Life Ins. Co.,* 457 F Supp 1303, 1306 [1978]; *see also Saxe, Bacon & Bolan, P.C. v Martindale-Hubbell, Inc.,* 710 F2d 87, 90 [1983]). We further note that "antitrust laws are concerned only with acts that harm 'competition, not competi-tors'" (*Apex Oil Co. v DiMauro,* 713 F Supp 587, 595 [1989], quoting *Brunswick Corp. v Pueblo Bowl-O-Mat, Inc.,* 429 US 477, 488 [1977], *cert denied sub nom. Treadway Cos., Inc. v Brunswick Corp.,* 429 US 1090 [1977]). "[B]ehavior which hurts or even destroys an individual competitor is not illegal under

anti-trust laws unless it also adversely affects competition" (*Simon & Son Upholstery v 601 W. Assoc.,* 2003 NY Slip Op 51281[U], *4). Accordingly, a restraint-of-trade Donnelly Act violation can only occur when the alleged "conspirators" are in competition with one another or with the plaintiff (*see Sands v Ticketmaster-N.Y., Inc.,* 207 AD2d 687, 688 [1994] [a Donnelly Act claim is not stated where the plaintiff alleged that the defendant ticket vendor preferred certain promoters of tickets since "defendant and the 'venues' which it deals with, such as theatres, stadiums, arenas and promoters, are in the respective positions of agent and principal, not competitors"]).

Here, there is no allegation of any conspiracy among Shapiro, Austin Sheppard, and its competitors. The alleged conspiracy involves Austin Sheppard and various officers of the cooperative and/or its management agency, and none of the latter compete with the plaintiff (*see Bello v Cablevision Sys. Corp., supra* at 264 ["The failure of the plaintiffs to allege that the defendant engaged in concerted activity with another entity requires dismissal of this cause of action"]; *Hall Heating Co. v New York State Elec. & Gas Corp.,* 180 AD2d 957 [1992] [where complaint alleged that certain unilateral action by New York State Electric and Gas could have the effect of giving one contractor an advantage over another, court held that unilateral action was insufficient to support a claimed violation of General Business Law § 340]). Since the plaintiff has not shown a conspiracy or reciprocal relationship between two or more entities, there can be no Donnelly Act violation (*see LoPresti v Massachusetts Mut. Life Ins. Co., supra*).

Accordingly, under the circumstances of this case, the order is reversed insofar as appealed from, on the law, those branches of the defendants' respective motions which were for summary judgment dismissing the cause of action alleging a violation of General Business Law § 340 *et seq.* insofar as asserted against them are granted, and that cause of action is dismissed.

SCHMIDT, J.P., CRANE and SPOLZINO, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with one bill of costs payable to the appellants appearing separately and filing separate briefs, those branches of the defendants' respective motions which were for summary judgment dismissing the cause of action alleging a violation of General Business Law § 340 *et seq.* insofar as asserted against them are granted, and that cause of action is dismissed.