10-2286-cv
City of New York v. Group Health Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2010

(Argued: May 4, 2011      Decided: August 18, 2011)

Docket No. 10-2286-cv

----------------------------------------------------x

CITY OF NEW YORK,

Plaintiff-Appellant,


-- v. --

GROUP HEALTH INCORPORATED, HIP FOUNDATION, INC., and
HEALTH INSURANCE PLAN OF GREATER NEW YORK,

Defendants-Appellees.

----------------------------------------------------x

B e f o r e :  MINER, WALKER, and WESLEY, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York (Richard J. Sullivan, Judge) granting summary judgment to Defendants-Appellees and dismissing the complaint. The City of New York argues that the district court erred by concluding that the market pled in its antitrust complaint is legally insufficient and by denying the City's motion to amend its complaint. We conclude that summary judgment was appropriate and that it was within the district court's discretion to deny leave to amend. We therefore AFFIRM the judgment of the district court.

1

ALAN H. KLEINMAN, Assistant Corporation Counsel (Michael A. Cardozo, Corporation Counsel of the City of New York, June R. Buch, John R. Low-Beer, Richard J. Costa, Assistant Corporation Counsel, on the brief), New York, N.Y., for Plaintiff-Appellant City of New York.

STEPHEN M. AXINN (Michael L. Keeley, on the brief), Axinn, Veltrop & Harkrider LLP, New York, N.Y., for Defendant-Appellee Group Health Incorporated.

BRUCE H. SCHNEIDER (Derek I.A. Silverman, on the brief), Stroock & Stroock & Lavan LLP, New York, N.Y., for Defendants-Appellees Health Insurance Plan of Greater New York and HIP Foundation, Inc.

JOHN M. WALKER, JR., Circuit Judge:

Plaintiff-Appellant City of New York appeals from a judgment of the United States District Court for the Southern District of New York (Richard J. Sullivan, Judge) granting summary judgment to Defendants-Appellees Group Health Incorporated ("GHI"), HIP Foundation, Inc., and Health Insurance Plan of Greater New York (together, "HIP"), and dismissing the City's antitrust complaint without leave to amend.

The City sued health insurance providers GHI and HIP under federal and New York State antitrust laws, seeking to prevent the companies from merging. The district court granted summary judgment to GHI and HIP, holding that the market definition the City alleged as the basis of its claims is legally deficient. It

2

also denied the City's motion to amend its complaint to allege a new market definition. The City challenges these conclusions on appeal.

We agree with the district court that the alleged relevant market is legally deficient, and conclude that its denial of leave to amend was not an abuse of discretion. We therefore AFFIRM the district court's judgment.

**BACKGROUND**

**I. New York City's Health Benefits Program and the Proposed Merger**

The City and several related entities obtain health insurance for their employees and their employees' dependents through the City's Health Benefits Program. Approximately 1.2 million individuals are insured through the Program. The City's Office of Labor Relations administers the Program jointly with the Municipal Labor Committee, an association of about 50 unions that represent the employees.

As a result of collective bargaining agreements and municipal law requirements, the City offers its employees several types of health insurance plans. Employees can select coverage through a Health Maintenance Organization ("HMO") plan, a Participating Provider Organization ("PPO") plan, or a Point of Service ("POS") plan.

The City periodically issues Requests for Proposals ("RFPs") inviting insurers to propose plan designs and associated premiums. Insurance providers compete to be selected during each procurement round.

Employees choose among the plans that the City selects. Those who do not receive Medicare benefits can choose among thirteen plans, and Medicare participants can choose among fifteen.

GHI and HIP offer the two least expensive and most popular plans. GHI offers a PPO plan and HIP offers an HMO plan. The majority of City employees and non-Medicare retirees select coverage from GHI's or HIP's plan, with only a small minority choosing the plan with the third largest share of enrollment.

Under municipal law and by agreement between the City and the Municipal Labor Committee, the City pays the entire premium for employees who enroll in either the HIP plan or the GHI plan. Employees who select more expensive coverage from another carrier must pay any excess in the cost of that coverage over the cost of the HIP plan.

In September 2005, GHI and HIP announced their intent to merge and to convert from non-profit to for-profit status. The United States Department of Justice and the New York State Attorney General investigated the antitrust implications of the proposed merger and decided not to challenge it. The New York State Departments of Health and Insurance granted approval for GHI and

4

HIP to combine their operations as an interim step pending approval of an acceptable plan of conversion to a publicly owned company and, thereafter, a formal merger.

**II. Procedural History**

On November 13, 2006, the City filed this action seeking an injunction to block the merger. The complaint challenges the merger under § 7 of the Clayton Act, 15 U.S.C. § 18, §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, and the Donnelly Act, N.Y. Gen. Bus. L. § 340(1), New York's antitrust law. It alleges that because GHI's and HIP's plans cover a vast majority of the employees in the City's Health Benefits Program, the merger of the carriers will substantially reduce competition, and will result in monopolization of the relevant market and an increase in the premiums that the City is required to pay. The complaint defines the relevant market as the "low-cost municipal health benefits market." This market includes only those insurance plans that are inexpensive and that the City selects for inclusion in the Health Benefits Program.[1]

---

[1] The complaint alleges that this relevant market also includes the health insurance program that the New York City Transit Authority administers. Because the parties did not address this aspect of the alleged market in their briefing before the district court, the district court did not consider it in resolving the summary judgment motions. See City of New York v. Group Health Inc., No. 06 Civ. 13122 (RJS), 2010 WL 2132246, at *3 n.3 (S.D.N.Y. May 11, 2010). The parties do not raise this aspect of the alleged market on appeal.

When the City filed its complaint, it moved for a temporary restraining order blocking the merger. Judge Karas, to whom the case was initially assigned, denied the motion. He explained that "there are substantial questions about the market definition analysis that the plaintiff has adopted here. It appears to be focused on what the City is paying for, and not so much on the market of insurance coverage. . . . I think the products . . . are the same, whether they're offered to the City or they're offered to a private large employer."

On December 4, 2009, after several years of discovery, GHI and HIP moved for summary judgment dismissing the City's complaint. They argued (1) that the market the City alleged in its complaint is insufficient as a matter of law because it is based on the City's preferences and ignores the market of insurance providers that compete for the City's business, and (2) that the City could not demonstrate a relevant antitrust injury because any increased premiums would result from GHI's and HIP's conversion to for-profit entities, not from their merger.

On January 20, 2010, nine days before its opposition papers were due, the City sought leave to file a motion to amend its complaint to add alternative market definitions. The City sought to add two alternative markets: (1) all insurance plans the City selected for inclusion in the Health Benefits Program, not only the inexpensive plans; and (2) the market for all commercial medical

6

benefits in downstate New York.  The City also sought to base its claim on the "Upward Pricing Pressure" test, which analyzes the effect of a merger on the merged firm's pricing incentives.  The City contended that the Upward Pricing Pressure test could establish the anticompetitive effect of the merger without the need to define a relevant market.

The district court granted GHI and HIP's summary judgment motion and denied the City's motion to amend.  City of New York v. Group Health Inc., No. 06 Civ. 13122 (RJS), 2010 WL 2132246, at *7 (S.D.N.Y. May 11, 2010).  It concluded that the market the City alleged in its complaint is legally insufficient because it was defined by the preferences of a single purchaser: the City. Id. at *4-5.  Judge Sullivan, to whom the case had been reassigned, denied the City's motion to amend on the basis that (1) the City exhibited undue delay because it was on notice of its potentially deficient market definition at least as early as Judge Karas's denial of its request for a temporary restraining order more than three years earlier, and (2) the amendments would prejudice GHI and HIP by forcing them to conduct substantial additional discovery after three and a half years of defending a lawsuit premised on the City's narrow market definition.  Id. at *5-7.

The City appealed.

7

**DISCUSSION**

**I. Sufficiency of the Alleged Market**

We review an award of summary judgment de novo, affirming "only if there is no genuine issue as to any material fact, and if the moving party is entitled to a judgment as a matter of law." Allianz Ins. Co. v. Lerner, 416 F.3d 109, 113 (2d Cir. 2005).

To state a claim under § 7 of the Clayton Act, §§ 1 or 2 of the Sherman Act, or New York's Donnelly Act, a plaintiff must allege a plausible relevant market in which competition will be impaired. See, e.g., United States v. E.I. du Pont de Nemours & Co., 353 U.S. 586, 593 (1957) ("Determination of the relevant market is a necessary predicate to a finding of a violation of the Clayton Act because the threatened monopoly must be one which will substantially lessen competition within the area of effective competition." (internal quotation marks omitted)); Chapman v. New York State Div. for Youth, 546 F.3d 230, 238 (2d Cir. 2008) (Sherman Act); Benjamin of Forest Hills Realty, Inc. v. Austin Sheppard Realty, Inc., 823 N.Y.S.2d 79, 83 (App. Div. 2006) (Donnelly Act). The relevant market must be defined "as all products 'reasonably interchangeable by consumers for the same purposes,' because the ability of consumers to switch to a substitute restrains a firm's ability to raise prices above the competitive level." Geneva Pharm. Tech. Corp. v. Barr Labs. Inc., 386 F.3d 485, 496 (2d Cir. 2004) (quoting E.I. du Pont de Nemours

8

& Co., 351 U.S. at 395). "[W]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient." Chapman, 546 F.3d at 238 (quoting Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997)).

Here, the district court correctly concluded that the market alleged in the City's complaint is legally insufficient because it is defined by the City's preferences, not according to the rule of reasonable interchangeability and cross-elasticity of demand. The market alleged in the City's complaint ignores the competition existing among insurance providers for the City's business, as well as the health insurance market for other large employers in the region. The City does not allege any factor that would prevent insurance companies other than those it selects for the Health Benefits Program from proposing competitive products should the merged firm raise its premiums to supracompetitive prices.

The arguments the City raises on appeal are unavailing. The City first argues that the insurance plans it approves constitute a unique market because they reflect the City's "sound policy choices." A single purchaser's preferences, however, cannot define

a market. We faced a similar argument in <u>Hack v. President and Fellows of Yale College</u>, in which the plaintiffs complained that Yale was illegally tying dormitory housing to their education and alleged that Yale, because of its uniqueness, constituted its own market for education. 237 F.3d 81, 86-87 (2d Cir. 2000), abrogated on other grounds by <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002). We rejected this contention, holding that, although Yale is "unique, . . . in a collegiate sense," it does not constitute its own tying market because "there are many institutions of higher learning providing superb educational opportunities." <u>Id.</u> at 86. Here, although the approved insurance plans may have been particularly suitable to the City's needs, the City does not allege any reason why other similar insurance plans are unsuitable or why the numerous insurance providers in the area could not or would not design suitable plans to compete with those that the City selected.

The City next argues that its proposed market is distinct from a "single-purchaser market" because the employees who select their insurance coverage also constitute purchasers. However, the employees choose health coverage only from the plans that the City has already selected for inclusion in the Health Benefits Program. The employees' ability to choose among the plans in the Health Benefits Program does not change the fact that the competition among insurance providers for the business of the City and other large employers would constrain the ability of the merged firm to

10

set its premium above a competitive price.  It thus cannot save the City's artificially narrow market definition.

Finally, the City argues that the district court erred in failing to consider its expert report, which, it argues, establishes the harm to competition that would result from the merger.  The district court, however, granted summary judgment on the basis that the alleged relevant market is legally insufficient.  The City's expert report was thus irrelevant.

**II.  Denial of the City's Motion to Amend**

"[W]e review a district court's denial of a motion to amend under the abuse of discretion standard."  Gorman v. Consol. Edison Corp., 488 F.3d 586, 592 (2d Cir. 2007).  A district court abuses its discretion when it "bases its ruling on an incorrect legal standard or on a clearly erroneous assessment of the facts."  Bronx Household of Faith v. Bd. of Educ., 331 F.3d 342, 348 (2d Cir. 2003).

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend the complaint] when justice so requires."  The rule in our circuit is to allow a party to amend its complaint unless the nonmovant demonstrates prejudice or bad faith.  AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010) (citing Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)).

During the course of briefing on GHI and HIP's summary judgment motion, the City moved to amend its complaint. It sought to add two additional market definitions: first, all insurance providers participating in the City's Health Benefits Program, not just the low-cost providers, and, second, all providers of commercial medical benefits in downstate New York. It also sought to add an alternative basis for its antitrust claims, the Upward Pricing Pressure Test, which, the City explains, "predicts the likely competitive impact of a proposed merger based on how a merger is likely to alter the merged firm's pricing incentives."[2] The City argues that the Upward Pricing Pressure test can be used instead of "the traditional approach of defining relevant markets."

In denying the City's motion to amend, the district court held that the City had exhibited undue delay and that the proposed amendment would prejudice GHI and HIP. City of New York v. Group Health Inc., No. 06 Civ. 13122 (RJS), 2010 WL 2132246, at *5-7 (S.D.N.Y. May 11, 2010). The district court noted that the City was aware of the flaws in its complaint at least since Judge Karas questioned the City's market definition in denying its motion for

---

[2] The City explains that the Upward Pricing Pressure test

> measures the effect of two opposing forces resulting from a merger. First, the upward pricing pressure induced by the merger is measured by the diversion ratio, the sales that would otherwise be lost by a price increase, but that get[] recaptured by the diversion of those sales to the larger, merged entity. The second, countervailing downward price pressure is measured by efficiencies that would reduce the merged firm's marginal cost.

12

a temporary restraining order more than three years earlier.  Id. at *6.  In addition, the district court explained that allowing the amendment would unduly prejudice GHI and HIP by requiring them to conduct substantial additional discovery on a different and much broader market.  Id.  The district court also rejected the Upward Pricing Pressure Test.  It noted that "its research has not revealed a single decision of a federal court adopting this test," which, "[i]n light of the case law's clear requirement that a [p]laintiff allege a particular product market in which competition will be impaired, . . . is hardly surprising."  Id. at *6 n.6.

The City argues that the district court abused its discretion by misapplying the standards that govern a motion to amend.  First, it argues that its addition of the market comprising all insurance providers in the Health Benefits Program does not require an amendment because that market represents only a "slight change" from the market pled in the City's initial complaint.  Whether or not the City's addition of a market consisting of all insurance providers in the Health Benefits Program requires a formal amendment, this market suffers from the same legal deficiency as the market in the City's initial complaint.  As discussed above, a market limited to the providers participating in the Health Benefits Program is not -- as is required -- defined by the rule of reasonable interchangeability and cross-elasticity of demand.  It ignores the market of health insurance providers in downstate New

13

York that compete for the business of the City and other large employers. It thus cannot form the basis of the City's antitrust claims and its addition to the complaint would be futile. See AEP Energy Servs. Gas Holding Co., 626 F.3d at 726 ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim.").

The City next argues that GHI and HIP did not demonstrate undue prejudice because they did not show that the amendment would require them to redo, or discard, discovery already conducted. The need to redo or discard discovery, however, is not the only form of undue prejudice we have recognized. An "[a]mendment may be prejudicial when, among other things, it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." AEP Energy Servs. Gas Holding Co., 626 F.3d at 725-26 (internal quotation marks omitted). Here, the City's amendment would, at a minimum, require additional discovery from large employers other than the City in the downstate New York area and from the health insurance providers that compete for their business. It was not clearly erroneous for the district court to conclude that the need to obtain this discovery would delay proceedings and require substantial additional expense.

In addition, as the district court explained, the City waited more than three years to seek an amendment, and did so only after

14

confronted with a motion for summary judgment challenging its market definition. The City argues that it cannot be faulted for the delay because GHI and HIP went along with discovery, also waiting more than three years to challenge the City's market definition. While GHI and HIP could have sought dismissal of the City's complaint earlier in the litigation, their failure to do so does not necessarily mitigate the City's delay. Although the City's delay in seeking amendment may not be evidence of bad faith, we do not think it was an abuse of discretion for the district court to find that this delay, together with the prejudice that would result from the amendment, warranted denial of the City's motion to amend.

Finally, we find no error or abuse of discretion in the district court's rejection of the Upward Pricing Pressure test. As the district court explained, and as we discussed above, the applicable case law requires plaintiffs asserting a claim under the Sherman Act, the Clayton Act, or the Donnelly Act to allege a market in which the challenged merger will impair competition. While the City explains the Upward Pricing Pressure test's usefulness in assessing the impact of a merger, it does not explain how the test can substitute for a definition of the relevant market in the pleadings. Cf. Carl Shapiro, Deputy Ass't Attorney Gen. for Economics, Antitrust Division, U.S. Dep't of Justice, Update from the Antitrust Division, at 15 (Nov. 18, 2010),

15

http://www.justice.gov/atr/public/speeches/264295.pdf (recognizing need to define relevant market in any antitrust challenge). Whether or not the Upward Pricing Pressure test -- and its results in this case as explained by the City's expert -- would, as the City argues, be admissible as evidence of impaired competition is not relevant to the adequacy of the pleadings.

As such, we find no abuse of discretion and affirm the district court's denial of the City's motion to amend.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the district court.