In an action, inter alia, to recover damages for violation of General Business Law § 340 (the Donnelly Antitrust Act), the defendants Village Taxi Corp., RC. Taxi Corporation, Luso American Taxi, Inc., Pedro Montoya, Yodna Vivanco-Small, and Zoila Ivarra appeal, and the defendant Anean Goyburu Corp. separately appeals, as limited by their respective briefs, from so much of a judgment of the Supreme Court, Westchester County (Smith, J.), dated March 31, 2014, as, upon the denial of that branch of their motion which was pursuant to CPLR 4401 for judgment as a matter of law dismissing the causes of action alleging violations of General Business Law §§ 340 and 349 and injurious falsehood insofar as asserted against them, and upon a jury verdict finding, inter alia, that they violated General Business Law §§ 340 and 349 and awarding damages to the plaintiff Coqui Taxi Corporation, is in favor of that plaintiff and against them in the principal sums of $787,000 for compensatory damages and $50,000 for punitive damages.
 

 Ordered that the judgment is reversed insofar as appealed from, on the law, with costs payable to the appellants appearing separately and filing separate briefs, and that branch of the appellants’ motion which was pursuant to CPLR 4401 for judgment as a matter of law dismissing the causes of action alleging violations of General Business Law §§ 340 and 349 and injurious falsehood insofar as asserted against them is granted, and those causes of action are dismissed insofar as asserted against the appellants.
 

 Pursuant to the Code of the Village of Port Chester (hereinafter Village Code), there were 75 taxicab licenses, or medallions, available in the Village. In addition to other licensing requirements, the Village Code provides that “[n]o [taxicab] license shall be issued unless said person and vehicle are affiliated with a dispatching company duly licensed under the provisions of this chapter” (Village Code § 295-11 [A]). A “DISPATCH COMPANY” is defined as “[a]ny person(s), corporation, partnership or other entity that solicits or receives requests for taxi service” (Village Code § 295-1).
 

 Prior to 2009, the Village Code provided for four taxi dispatch licenses (see Village Code § 295-20 [E] [1]), and four taxicab companies each held one of the dispatch licenses. Those companies are the defendants Village Taxi Corp. (hereinafter Village Taxi), P.C. Taxi Corporation (hereinafter P.C. Taxi), Luso American Taxi, Inc. (hereinafter Luso Taxi), and Anean Goyburu Corp., which was also known as RC Taxi (hereinafter RC Taxi).
 

 On February 25, 2009, notwithstanding that the Village Code provided for only four taxi dispatch licenses, the Village issued a fifth taxi dispatch license to the plaintiff Dolores Gonzalez. Approximately three months later in May 2009, the Village Code was amended to permit the issuance of a fifth dispatch license (see Village Code § 295-20 [E] [1]). Gonzalez used the dispatch license to open the plaintiff Coqui Taxi Corporation (hereinafter Coqui) as the Village’s fifth taxi company. Gonzalez and her boyfriend, the plaintiff Carlos Pereya, each had their own medallion taxi and worked as taxi drivers for Coqui.
 

 Licensed drivers who operate their own medallion taxicabs typically enter into an arrangement with a licensed taxi dispatch company, whereby the driver pays the taxi company a daily or weekly fee for its dispatch service to receive calls for passenger pickups from the company’s dispatcher. It was common for medallion drivers to move from one taxi company to another for dispatch services. Providing a dispatch service is one source of revenue for a taxi company in the Village. Another source of revenue for a taxi company that owns licensed medallion taxicabs is to rent those vehicles to taxi drivers who do not have their own medallion taxicabs. At all times relevant to this appeal, Coqui had no additional licensed medallion taxicabs to rent to taxi drivers. Accordingly, aside from the fares earned by Gonzalez and Pereya as drivers, Coqui anticipated that its primary source of revenue would come from dispatch service fees charged to medallion drivers who had their own licensed taxicabs.
 

 However, after Coqui opened for business, only two medallion drivers used Coqui’s dispatch service, and they did so for only three weeks. Gonzalez believed that Coqui’s failure to attract medallion drivers to its dispatch service was attributable to certain disparaging remarks about Coqui and threats against drivers that were broadcast over the dispatch radio by the defendant taxi companies.
 

 The plaintiffs commenced this action against the defendant taxi companies and their individual owners (hereinafter collectively the appellants), among others, to recover damages, inter alia, for a violation of General Business Law § 340 (the Donnelly Antitrust Act) based on an alleged agreement causing a restraint on trade, and for alleged deceptive trade practices in violation of General Business Law § 349, as well as a cause of action alleging injurious falsehood. The plaintiffs alleged that the defendant companies grew concerned about their profitability when the Village issued a fifth dispatch license to Gonzalez and, as a result, the defendant companies formed an agreement or conspiracy to make concerted efforts to dissuade medallion drivers from using Coqui’s dispatch service. The plaintiffs alleged that the defendant companies used their dispatchers to make disparaging remarks about Gonzalez and Coqui and to threaten medallion drivers over the dispatch radio. The plaintiffs further alleged that these threats and disparaging remarks perpetrated by the defendant companies inflicted economic harm on Coqui.
 

 At a jury trial, the plaintiffs presented 10 witnesses, including the owners of the defendant companies. Since the defendant owners testified on the plaintiffs’ case, the defendants did not present any additional witnesses.
 

 Michael Martinez, a former taxi dispatcher, testified that at different times over the years, he had worked as a dispatcher for all four defendant companies. He testified that he was directed by individual defendant owners to say unpleasant things about Coqui over the radio from approximately 2009 until 2012 or 2013, but he did not expressly describe an agreement between the defendant owners. Martinez stated that he used the dispatching radio to cast aspersions on Gonzalez’s character and describe Coqui as an illegal company. Additionally, he stated that he was given instructions by individual defendant owners to warn medallion drivers that if they affiliated with Coqui, then they could not come back to work with the defendant taxi companies.
 

 The plaintiffs also presented the deposition testimony of taxi driver Herrera, who was not a medallion driver. Herrera alluded to a threat by one of the defendant companies, but denied that this threat affected his decision to work with any taxi company. In addition, taxi driver Franco, who was not a medallion driver, testified that drivers were afraid because of things being said over the radio, but he did not explain how he knew what was in the minds of the medallion drivers.
 

 Significantly, no driver of his or her own medallion taxi cab testified that he or she actually heard the threats broadcast over the radio or that the threats caused him or her to choose another taxi company instead of Coqui for dispatch service.
 

 At the close of the plaintiffs’ case, the appellants moved pursuant to CPLR 4401 for judgment as a matter of law dismissing the causes of action remaining against them, i.e., those alleging violations of General Business Law §§ 340 and 349 and injurious falsehood. The Supreme Court denied the motion. Thereafter, the jury found that the appellants violated General Business Law §§ 340 and 349 and that they committed an injurious falsehood. The jury awarded Coqui compensatory damages in the principal sum of $787,000, and punitive damages in the principal sum of $50,000. We reverse.
 

 A motion for judgment as a matter of law pursuant to CPLR 4401 should be granted when the trial court determines that, upon the evidence presented, there is “no rational process by which the fact trier could base a finding in favor of the nonmoving party” (Szczerbiak v Pilat, 90 NY2d 553, 556 [1997]; see Figueroa v City of New York, 101 AD3d 674, 674 [2012]). In considering such a motion, the trial court must view the evidence in the light most favorable to the nonmovant, affording him or her every favorable inference which may reasonably be drawn from the evidence (see Szczerbiak v Pilat, 90 NY2d at 556; Barnes v Sam Burt Houses, Inc., 140 AD3d 997, 998 [2016]).
 

 As pertinent to this appeal, the Donnelly Antitrust Act (General Business Law § 340 et seq.), which was modeled on the federal Sherman Anti-Trust Act (15 USC § 1 et seq.), declares illegal and against public policy “[any] agreement ... in the conduct of any business [or] trade . . . whereby [competition or the free exercise of any activity in the conduct of any business . . . is . . . restrained” (General Business Law § 340 [1]). A party claiming a violation of the Donnelly Act based upon such an arrangement or conspiracy, must establish “both concerted action by two or more entities and a consequent restraint of trade within an identified relevant product market” (Global Reins. Corp.-U.S. Branch v Equitas Ltd., 18 NY3d 722, 731 [2012]). In order to establish such a claim under the Don-nelly Act, a plaintiff must demonstrate a conspiracy or a reciprocal arrangement between two or more legal or economic entities, identify the relevant market affected, and show that the economic impact of the alleged conspiracy or arrangement restrains trade in the market (see Shaw v Club Mgrs. Assn. of Am., Inc., 84 AD3d 928, 929 [2011]; Capitaland United Soccer Club v Capital Dist. Sports & Entertainment, 238 AD2d 777, 779 [1997]; Newsday, Inc. v Fantastic Mind, 237 AD2d 497 [1997]; see also Altman v Bayer Corp., 125 F Supp 2d 666, 668 [SD NY 2000]; Great Atl. & Pac. Tea Co., Inc. v Town of E. Hampton, 997 F Supp 340 [ED NY 1998]).
 

 Here, the plaintiffs’ trial evidence demonstrated that the relevant market in this alleged restraint of trade consisted of at least 48 medallion drivers in the Village, who selected which taxi company to utilize for dispatch services (cf. Benjamin of Forest Hills Realty, Inc. v Austin Sheppard Realty, Inc., 34 AD3d 91, 96 [2006]). Assuming, without deciding, that the plaintiffs’ trial evidence demonstrated the existence of an arrangement or “reciprocal relationship” between the defendant taxi companies (Shaw v Club Mgrs. Assn. of Am., Inc., 84 AD3d at 929), the plaintiffs failed to establish, prima facie, that the economic impact of that arrangement was to restrain trade in the relevant market of taxi drivers in the Village who owned their own medallion taxi cabs.
 

 The plaintiffs’ evidence demonstrated that disparaging comments were made about Gonzalez and Coqui, as well as statements that if drivers utilized Coqui’s dispatch services, then the medallion taxi drivers could not later return to work with any one of the defendant companies. However, there was no testimony that a medallion taxi driver actually heard the threats, or that the threats, rather than other factors, caused him or her to choose another taxi company over Coqui for dispatch service. Significantly, the plaintiffs’ evidence demonstrated that several factors determined which taxi company a driver will utilize for dispatch service. They include how much the driver was earning, whether the driver had trust in the company, and whether he or she liked the dispatcher. Further, the two drivers who did use Coqui’s dispatch service left a mere three weeks later because they could not make enough money at Coqui, not because of any threats or disparaging remarks heard over the radio. Moreover, one of the drivers who left also believed that Gonzalez was withholding service calls from her.
 

 Additionally, there was testimony demonstrating that Gonzalez was disagreeable and that many of the drivers in the Village did not like her. The testimony also revealed that Gonzalez did not have a base of operations for Coqui and that her advertising strategy consisted only of a few business cards and signs. Thus, the plaintiffs’ evidence reflects several reasons, apart from the reported threats on the radio, that seasoned medallion taxi drivers would choose not to pay Coqui, rather than the established taxi companies with more name recognition, for dispatch service.
 

 In any event, the plaintiffs’ evidence with respect to damages was wholly speculative.
 

 The plaintiffs did not present any experts to instruct the jury on the “equilibrium theory” or any other economic theory espoused by their counsel. The plaintiffs also failed to present any expert testimony on the calculation of any financial damages. Gonzalez herself could only guess at Coqui’s alleged losses. She testified that she did not know how much she would make in Coqui’s first year and that, if the defendants did not make disparaging remarks about her, Coqui’s income would have been “either the same or much more, depending.”
 

 Accordingly, on this record, the plaintiffs failed to establish, prima facie, that the appellants’ actions caused a restraint of trade in violation of General Business Law § 340.
 

 The plaintiffs also failed to establish, prima facie, that the appellants violated General Business Law § 349, which authorizes the New York State Attorney General to commence an action on behalf of the State of New York to enjoin unlawful deceptive acts or practices in the conduct of any business, trade, or commerce. General Business Law § 349 requires a showing: “first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act” (Stutman v Chemical Bank, 95 NY2d 24, 29 [2000], citing, inter alia, Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 25 [1995]; see Harmon v Major Chrysler Jeep Dodge, Inc., 101 AD3d 679, 682 [2012]). The plaintiffs’ evidence at trial failed to demonstrate that the appellants’ alleged deceptive acts were consumer-oriented in that there was an impact on the riding public as consumers of taxi service (see generally Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d at 25; cf. Gaidon v Guardian Life Ins. Co. of Am., 94 NY2d 330, 344 [1999]; Aries Fin., LLC v 12005 142nd St., LLC, 127 AD3d 900, 903 [2015]).
 

 Lastly, the plaintiffs failed to establish, prima facie, a cause of action sounding in injurious falsehood. The plaintiffs did not establish any special damages with sufficient specificity that were caused by the appellants’ actions (see Nyack Hosp. v Empire Blue Cross & Blue Shield, 253 AD2d 743, 744 [1998]; Penn-Ohio Steel Corp. v Allis-Chalmers Mfg. Co., 7 AD2d 441 [1959]). “[G]eneral allegations of lost sales from unidentified lost customers are insufficient” to establish injurious falsehood as a basis for damages (DiSanto v Forsyth, 258 AD2d 497, 498 [1999]).
 

 Accordingly, the Supreme Court should have granted the appellants’ motion pursuant to CPLR 4401 for judgment of as a matter of law dismissing the causes of action alleging violation of General Business Law §§ 340 and 349 and injurious falsehood insofar as asserted against them at the close of the plaintiffs’ case.
 

 We need not reach the appellants’ remaining contentions in light of our determination.
 

 Balkin, J.P., Chambers, Maltese and Duffy, JJ., concur.