**Cindy L. LEWIS, Plaintiff,**

v.

**LIVINGSTON COUNTY CENTER FOR NURSING AND REHABILITATION, Defendant.**

**No. 12–CV–6111 EAW.**

United States District Court, W.D. New York.

Signed June 25, 2014.

Michelle Yvonne Cimino, Rochester, NY, for Plaintiff.

Michael P. McClaren, Jeremy A. Colby, Ryan G. Smith, Webster Szanyi, LLP, Buffalo, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### INTRODUCTION

Plaintiff Cindy L. Lewis ("Plaintiff") brings this action against Livingston County Center for Nursing and Rehabilitation ("Defendant" or "Livingston County CNR"), alleging violations of Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12201 *et seq.,* and the New York State Human Rights Law ("NYSHRL"), Executive Law §§ 290 *et seq.,* for purported discrimination and retaliation based on her alleged disability. Defendant has filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), and Plaintiff has filed a cross-motion to amend the complaint pursuant to Fed.R.Civ.P. 15(a)(2). (Dkt. 9 & 12). For the reasons set forth below, Plaintiff's cross-motion to amend is granted, and Defendant's motion to dismiss is granted in part and denied in part.

### BACKGROUND

Plaintiff, a certified nursing assistant (CNA) and former employee of Defendant, alleges that Defendant unlawfully discriminated against her on the basis of disability during her employment. (Dkt. 1). Plaintiff alleges that she was employed by Defendant for 25 years prior to her termination on or about July 22, 2009, and that, throughout her employment, she was "repeatedly injured at work causing her to sustain hip, neck, knee, and left leg injuries including trochaleric bursitis." (*Id.* at ¶¶ 12–13). Plaintiff filed for workers' compensation benefits as a result of her injuries and was found to have a permanent, partial disability of her left leg. (*Id.* at ¶ 14).

Plaintiff alleges that her treating physician restricted her from working more than two, 12–hour shifts per week. (*Id.* at ¶ 15). Plaintiff further alleges that she provided Defendant with documentation regarding this restriction, and that Defendant accepted them "as ordered by her treating physician" on July 29, 2008, January 6, 2009, March 16, 2009, and July 15, 2009. (*Id.* at ¶ 16). Plaintiff alleges that the "major life activities" as defined by the ADA that were affected by her disability included "caring for oneself ... and working," and that Defendant regarded her as having such an impairment. (*Id.* at ¶¶ 17–18).

Plaintiff further alleges that, "[s]tarting in or around 2005, the County initiated a policy called 'mandation' ... in which the County was allowed to 'mandate' employees on duty to stay and work an additional four to eight hours with no prior notice," and that any CNAs "who refused to work the additional hours beyond their normal 8 hour shift were considered 'insubordinate' and subjected to 'progressive discipline.'" (*Id.* at ¶¶ 19–20). Plaintiff alleges that the mandation policy permitted sick or injured employees to request a limitation on the number of overtime hours they were required to work for up to 12 weeks per year; however, "after 12 weeks of restrictions, if an employee was medically restricted from working overtime they were nonetheless subjected to discipline if they

refused to work overtime." (*Id.* at ¶¶ 21–22).

Plaintiff alleges that, starting around 2007, she requested medical restrictions on the number of hours she had to work past her normal eight-hour shift "on at least nine occasions," but Defendant granted these requests only twice, in January 2008, and in April 2008. (*Id.* at ¶¶ 23–24). As a result, Plaintiff alleges that she refused "mandation of overtime in excess of four hours past her 8 hour shift on at least eight occasions because the mandated overtime hours were in violation of her medical restrictions and would jeopardize her health and cause her severe physical pain." (*Id.* at ¶ 25).

As a result of her refusal of mandated overtime, Plaintiff allegedly was subjected to progressive adverse employment actions including, but not limited to, "written warnings, written counseling, a suspension of five days without pay three different times ... and ultimately termination on July 29, 2009." (*Id.* at ¶ 26). Plaintiff further alleges that she complained to her Union and filed grievances regarding Defendant's failure to comply with her request for an accommodation under the ADA and the disparate treatment she received as a result of her request for an accommodation. (*Id.* at ¶ 27). Plaintiff does not provide the dates on which the complaint was made and the grievances were filed, but alleges that Defendant did not take effective action to address her complaints of discriminatory treatment. (*Id.* at ¶ 28). She also alleges that Defendant "subjected [her] to illegal retaliation" by mandating her to work eight hours beyond her eight-hour shift in violation of her medical restrictions when other CNAs were permitted to work shorter overtime periods. (*Id.* at ¶ 30).

On March 29, 2011, the Equal Employment Opportunity Commission ("EEOC") issued a determination that there was reasonable cause to believe that Defendant "has a written policy which violates the ADA and that [Defendant] disciplined and discharged [Plaintiff] because of disability." (Dkt. 11–1 at 3).

Plaintiff commenced the instant action on February 29, 2012. (Dkt. 1). On May 14, 2012, Defendant moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), arguing that Plaintiff's claims should be dismissed on several grounds, including: (1) Defendant lacks the capacity to be sued; (2) Plaintiff failed to serve a notice of claim with regard to her NYSHRL claims; (3) Plaintiff is not "otherwise qualified" under the ADA because mandated overtime is an "essential function" of her position; (4) Plaintiff's accommodation is unreasonable because it seeks to alter the rights of other employees; (5) Plaintiff was accommodated; and (6) Plaintiff failed to adequately allege a causal connection between the protected activity and alleged retaliation. (Dkt. 9–3 at 3).

Plaintiff filed response papers and a cross-motion for leave to amend the complaint on July 12, 2012, seeking to add Livingston County as a defendant and remove the Livingston County CNR. (Dkt. 11, 12 & 13). On July 19, 2012, Plaintiff filed a declaration with a red-lined proposed amended complaint. (Dkt. 17). The sole proposed amendment to the complaint was the replacement of Livingston County CNR with Livingston County as the defendant. (Dkt. 17–1 at 2). Defendant submitted a reply to its motion to dismiss and a response to Plaintiff's cross-motion to amend on July 25, 2012. (Dkt. 18).

On February 21, 2014, the case was transferred to the undersigned with no decision having been rendered concerning the pending motions. (Dkt. 20). Oral argument was held on May 12, 2014. (Dkt. 23). Following the oral argument, the Court

permitted the parties to submit letter briefs addressing the issue of whether Plaintiff failed to exhaust her claim against Livingston County by not naming the County in her EEOC charge. (*Id.*). Defendant submitted a letter brief on May 23, 2014, and Plaintiff submitted a letter brief on May 27, 2014. (Dkt. 24 & 25).

## DISCUSSION

### I. Legal Standard

■ " 'In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.' " *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991)). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Turkmen v. Ashcroft,* 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (internal quotations and citations·omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki,* 516 F.3d 50, 56 (2d Cir.2008) (alteration in original) (internal quotations and citations omitted).

### II. Defendant's Capacity to be Sued and Plaintiff's Motion to Amend

■ Defendant argues that the Livingston County CNR is a department of the County, and therefore it is not subject to suit and Plaintiff should have sued Livingston County. (Dkt. 9–3 at 7). Plaintiff does not adequately contest Defendant's assertion. (Dkt. 13 at 5). Indeed, pursuant to the County of Livingston's Resolution No. 2005–254, Livingston County CNR is a department of Livingston County. (Dkt. 9–2, Ex. E). Although it is not attached to Plaintiff's complaint, the Court may take judicial notice of Resolution 2005–254. *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills,* 815 F.Supp.2d 679, 691–92 (S.D.N.Y.2011) (taking judicial notice of village and town maps, resolutions, and declarations on a motion to dismiss).

■ A department is "merely an administrative arm of the County, and it therefore lacks the capacity to be sued." *Colpoys v. Cnty. of Erie,* No. 12–CV–908S, 2013 WL 5437635, at *3, 2013 U.S. Dist. LEXIS 139653, at *6–7 (W.D.N.Y. Sept. 27, 2013); *see also McKenzie v. Cnty. of Erie,* No. 12–CV–912S, 2013 WL 5348084, at *1–2, 2013 U.S. Dist. LEXIS 135967, at *5 (W.D.N.Y. Sept. 23, 2013) (dismissing claims against various Erie County depart-

ments); *Tulloch v. Erie Cnty. Holding Ctr.*, No. 10–CV–0207S, 2010 WL 2609054, at *2, 2010 U.S. Dist. LEXIS 64349, at *5 (W.D.N.Y. June 24, 2010) (dismissing claims against the Erie County Holding Center because it is "merely an arm of the County, and does not have a legal identity separate and apart from the County and thus cannot be sued. . . .").

██ Plaintiff filed a motion for leave to amend her complaint to add Livingston County as a defendant to this action on July 12, 2012, and submitted a declaration with a red-lined proposed amended complaint on July 19, 2012, which amends the caption to replace the named defendant as Livingston County. (Dkt. 17–1). Pursuant to Fed.R.Civ.P. 15(a)(2), a Court should "freely give" leave to amend when justice so requires. The Second Circuit rule is to allow a party to amend its complaint unless the non-movant demonstrates prejudice or bad faith. *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 157 (2d Cir.2011). "This permissive standard is consistent with [the] 'strong preference for resolving disputes on the merits.'" *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir.2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir.2005)).

██ Plaintiff's instant motion is her first request to amend the complaint, and Defendant has failed to demonstrate that Plaintiff's amendment would be prejudicial or is made in bad faith. Instead, Defendant argues that Plaintiff's motion to amend should be dismissed as "futile" because her complaint can be dismissed on other grounds. (Dkt. 18 at 5). While a Court may deny a plaintiff's motion for

leave to amend the complaint when a request to replead would be futile, *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 127 (2d Cir.2007), for the reasons discussed below, dismissal of Plaintiff's ADA claims is not warranted in this case. Accordingly, the Court grants Plaintiff's motion to amend the complaint to replace the named defendant with Livingston County, and Defendant's motion to dismiss on the ground that it lacks the capacity to be sued is denied as moot.

### III. Plaintiff's Failure to Name Livingston County in her EEOC Charge

At oral argument on May 12, 2014, Defendant raised for the first time the argument that Plaintiff did not properly exhaust her administrative remedies because Livingston County was not named as a respondent in Plaintiff's administrative complaint. The Court instructed the parties to submit letter briefs addressing this issue by May 27, 2014. (Dkt. 23). Defendant submitted a letter brief on May 23, 2014, and Plaintiff submitted a letter brief on May 27, 2014. (Dkt. 24 & 25).

Title I of the ADA incorporates various provisions of Title VII of the Civil Rights Act of 1964, including 42 U.S.C. § 2000e–5 requiring a claimant to file a charge of employment discrimination naming the employer with the EEOC or authorized state agency. *See* 42 U.S.C. § 12117(a). Here, it is apparently undisputed that Plaintiff failed to name the proper party in her EEOC charge, naming the Livingston County CNR instead of the County itself.[1]

---

1. Neither party attached the EEOC charge to the pleadings or motion papers. In its post-oral argument submission, Defendant attached to its counsel's letter a copy of the EEOC charge. (Dkt. 24). Although the EEOC charge was not submitted in the proper format through a sworn affidavit or declaration, Plaintiff does not contest the fact that she failed to the name the County in her EEOC charge, and instead named the Livingston County CNR. (Dkt. 25).

 However, the Second Circuit takes a "'flexible stance in interpreting Title VII's procedural provisions,' ... so as not to frustrate Title VII's remedial goals," and therefore it recognizes an exception to the general rule that a defendant must be named in an EEOC charge. *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir.1991) (internal citation omitted). This exception, the "identity of interest" exception, allows a plaintiff to proceed against a defendant not named in the administrative charge "where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Id.*

 A district court should consider four factors when determining whether there is an identity of interest between the unnamed defendant and the party named in the administrative charge:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 209–10 (citing *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977)). "This multi-factor test is not a mechanical one, and no single factor is dispositive." *Zustovich v. Harvard Maint., Inc.*, 73 Fed. R.Serv.3d 462, 2009 WL 735062, at *8,

2009 U.S. Dist. LEXIS 22640, at *26 (S.D.N.Y.2009). "Ultimately, it is the plaintiff who has the burden of proving that the identity of interest exception applies." *Senecal v. B.G Lenders Serv. LLC*, 976 F.Supp.2d 199, 214 (N.D.N.Y.2013). *See, e.g., Sullivan v. City of New York*, No. 08 Civ. 7294(LTS)(MHD), 2011 WL 1239755, at *2–3, 2011 U.S. Dist. LEXIS 36381, at *6–9 (S.D.N.Y. Mar. 25, 2011), *aff'd*, 484 Fed.Appx. 628 (2d Cir.2012) (dismissing plaintiff's ADA claims where there was no identity of interest between named defendants and defendants who should have been named); *Hunt v. Pritchard Indus.*, No. 07 Civ. 0747(AJP), 07 Civ. 1382(JSR)(AJP), 2007 WL 1933904, at *5–6, 2007 U.S. Dist. LEXIS 47749, at *17–20 (S.D.N.Y. July 3, 2007) (recommending dismissal of plaintiff's Title VII and ADA claims against union where there was no identity of interest with named defendant); *Parker v. City of New York*, No. 04 CV 2257(JG), 2004 WL 2671634, at *3, 2004 U.S. Dist. LEXIS 23526, at *9–11 (E.D.N.Y. Nov. 18, 2004) (finding an identity of interest between City of New York and New York City Off–Track Betting Corporation so that plaintiff could bring her Title VII and ADA claims against both entities, even though only the City was named in EEOC charge).

In this case, the letter briefs submitted by the parties on the identity of interest issue do not contain a full analysis of each factor. Indeed, the argument was not even raised by Defendant until the oral argument of the pending motions, and Defendant has offered no explanation for its failure to raise the issue in its initial motion papers. Moreover, Plaintiff does point out that she was acting *pro se* at the time of the filing of her charge with the EEOC. (Dkt. 25). *See Cole v. Cent. Park Sys., Inc.*, No. 09–CV–3185 (RRM)(CLP), 2010 WL 3747591, at *5–6, 2010 U.S. Dist.

LEXIS 99173, at *17 (E.D.N.Y. Sept. 20, 2010) (the identity of interest exception is applied most commonly in the context of *pro se* administrative complaints).

Defendant cites two cases in support of its argument that Livingston County and Livingston County CNR do not have an identity of interest: *Torregiano v. Monroe Cnty.*, No. 11–CV–6300T, 2012 WL 2522809, 2012 U.S. Dist. LEXIS 89971 (W.D.N.Y. June 28, 2012), and *Niroomand v. Erie Cnty. Med. Ctr.*, No. 94–CV–0021E(H), 1996 WL 328183, 1996 U.S. Dist. LEXIS 8200 (W.D.N.Y. June 4, 1996). In both of these cases, the Court held that there was no identity of interest between the unnamed defendant and the party named in the administrative charge. However, these cases are distinguishable on the grounds that the party named in the administrative charge was affiliated with but also an entity completely separate from the county, rather than a department of the county, as is the case here. Plaintiff does not cite, and the Court is unable to find, a case holding that a department created by a county does not share an identity of interest with that county.

 Based on the limited information this Court has regarding the relationship between Livingston County and Livingston County CNR at this early stage of the litigation, the Court cannot accept Defendant's argument that there was no identity of interest between the County and the Livingston County CNR. When it is unclear whether the identity of interest exception applies, courts routinely permit the unnamed parties to proceed as defendants in the action. *See Jackson v. New York City Transit*, No. 05–CV–1763 (FB)(LB), 2005 WL 2664527, at *3, 2005 U.S. Dist. LEXIS 25111, at *7 (E.D.N.Y. Oct. 19, 2005) ("In the context of a motion to dismiss, the Court cannot conclude, based on the limited allegations in the complaint, that there was no identity of interest between [the unnamed respondent] and [the named respondent]; thus, [the unnamed party's] motion in regard to [Plaintiffs] Title VII, ADEA, and ADA claims is denied."); *Magill v. Precision Sys. Mfg., Inc.*, No. 01–CV–1482, 2002 U.S. Dist. LEXIS 26689, at *10 (N.D.N.Y. Sept. 11, 2002) ("although the papers before the Court do not conclusively establish whether or not there is an identity of interest between [the named respondent] and [the unnamed respondent], the record warrants affording plaintiff an opportunity to engage in jurisdictional discovery."); *Malik v. Pakistan Int'l Airlines Corp.*, No. 92 Civ. 9023(WK), 1995 U.S. Dist. LEXIS 10233, at *18 (S.D.N.Y. June 6, 1995) (" 'it is unclear at this stage whether the 'identity of interest' exception to the charging requirement is applicable'.... Accordingly, as leave to amend is to be freely granted, it should be granted with respect to the joinder of these persons as additional defendants to the Title VII claim.") (citation omitted); *Johnson v. M. Melnick & Co.*, No. 91 Civ. 7961(LAP), 1993 WL 118512, at *1–2, 1993 U.S. Dist. LEXIS 4834, at *4–6 (S.D.N.Y. Apr. 13, 1993) (granting plaintiff's motion to amend the complaint to add parties not named in his EEOC charge as it was unclear whether the identity of interest exception to the charging requirement was applicable, and noting that the new defendants would not be precluded from asserting this defense on their own behalf at a later date).

As a result, to the extent that Defendant has based its motion to dismiss on the ground that Livingston County was not named in the EEOC charge and the County does not have an identity of interest with its department named in the charge, Defendant's motion is denied. Livingston County is not precluded from asserting this defense in its answer and the Court

may revisit the issue on a motion for summary judgment.

## IV. Plaintiff's Failure to Serve a Notice of Claim

Defendant argues that Plaintiff's NYSHRL claims must be dismissed because she did not serve a notice of claim as required by County Law § 52. (Dkt. 9–3 at 9).

 "[I]n a federal court, state notice-of-claim statutes apply to *state-law* claims." *Hardy v. New York City Health & Hosps., Corp.,* 164 F.3d 789, 793 (2d Cir.1999) (emphasis in original). District courts are split as to whether the notice of claim requirements under **the General Municipal Law**—requiring the filing of a notice of claim for tort claims against a municipality—apply to NYSHRL claims. (Dkt. 13 at 6–7). *See Friel v. Cnty. of Nassau,* 947 F.Supp.2d 239, 247 (E.D.N.Y. 2013) ("There is disagreement ... among the New York courts as to whether the notice of claim requirement set forth in [N.Y. Gen. Mun. Law] § 50–e applies to causes of action brought for employment discrimination pursuant to [the NYSHRL]."). Plaintiff cites six cases from the Southern District of New York supporting her contention that notice of claim provisions do not apply to claims brought pursuant to the NYSHRL. (Dkt. 13 at 6–7). However, every one of the cases relied upon by Plaintiff addresses the applicability of General Municipal Law 50–e's notice of claim requirement, and not the applicability of County Law § 52, which is at issue in this case. Indeed, one of the cases cited by Plaintiff *Sussman v. New York City Health and Hosp. Corp.,* 94 Civ. 8461(LBS), 1997 WL 334964, 1997 U.S. Dist. LEXIS 8531 (S.D.N.Y. June 16, 1997)—points out that County Law § 52 contains "far broader language ... than General Municipal Law § 50–e. County

Law § 52 requires that a notice of claim be served before commencing a suit 'against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature ... and any other claim for damages arising at law or in equity.'" *Id.* at *14 n. 7, 1997 U.S. Dist. LEXIS 8531 at *42 n. 7.

With that distinction in mind, courts in the Western District of New York have held that claims under the NYSHRL are subject to the notice of claim requirements of County Law § 52. *Alessi v. Monroe Cnty.,* No. 07–CV–6163, 2010 WL 161488, at *11, 2010 U.S. Dist. LEXIS 2746, at *32 (W.D.N.Y. Jan. 13, 2010) ("A cause of action under the NYSHRL is subject to the notice of claim requirements of County Law § 52."); *see also Bielski v. Green,* 674 F.Supp.2d 414, 427 (W.D.N.Y.2009). Similarly, other New York district courts, including those in the Southern District, have held the same. *See Friel,* 947 F.Supp.2d at 247; *Woods v. City of Utica,* 902 F.Supp.2d 273, 285 (N.D.N.Y.2012); *Costabile v. Cnty. of Westchester,* 485 F.Supp.2d 424, 430–31 (S.D.N.Y.2007).

The New York State Court of Appeals also has held that NYSHRL claims are subject to the notice of claim requirements of County Law § 52. *Mills v. Cnty. of Monroe,* 59 N.Y.2d 307, 308, 464 N.Y.S.2d 709, 451 N.E.2d 456 (1983), *overruled in part by Felder v. Casey,* 487 U.S. 131, 134, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (dismissing plaintiff's NYSHRL claim for failure to file a notice of claim pursuant to County Law § 52, because "[w]hen an employment discrimination action is brought against a county under the State or Federal civil rights statutes, the failure to timely file a notice of claim shall be fatal unless the action has been brought to vindicate a public interest or leave to serve late notice has been granted by the court."); *see also Picciano v. Nassau Cnty. Civil Svc.*

*Comm'n,* 290 A.D.2d 164, 170–71, 736 N.Y.S.2d 55 (2d Dep't 2001) ("County Law § 52 ... applies to any claim for 'invasion of personal or property rights, of every name and nature' and to any claim for damages 'arising at law or in equity.' Accordingly, a cause of action under the Human Rights Law, while not a traditional tort, is subject to the notice of claim requirements of County Law § 52.").

Notice of claim requirements "are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action." *Am. Tel. & Tel. Co. v. New York City Dep't of Human Res.,* 736 F.Supp. 496, 499 (S.D.N.Y.1990) (citing *Murray v. LeRoy Cent. Sch. Dist.,* 67 N.Y.2d 775, 500 N.Y.S.2d 643, 491 N.E.2d 1100 (1986)). Based on the decisions issued by the Western District of New York and by New York state courts, this Court sees no reason why it should excuse Plaintiff from the notice of claim requirements of County Law § 52. "Plaintiff's failure to timely serve a notice of claim under County Law § 52 in this action against [Livingston County] to recover damages based on the NYSHRL is fatal." *Alessi,* 2010 WL 161488, at *11, 2010 U.S. Dist. LEXIS 2746, at *33. Accordingly, Plaintiff's NYSHRL claims are dismissed.

## V. Mandation as an "Essential Function" of Plaintiff's Position

Defendant next argues that Plaintiff's ADA claim must be dismissed because mandated overtime is an essential function of her position and a reasonable accommodation can never eliminate an essential function. (Dkt. 9–3 at 11).

"In order to establish a prima facie case of discrimination under the ADA, a plaintiff must [allege] (a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." *Brady v. Wal–Mart Stores, Inc.,* 531 F.3d 127, 134 (2d Cir.2008) (citing *Jacques v. DiMarzio, Inc.,* 386 F.3d 192, 198 (2d Cir. 2004), *superseded by statute on other grounds* ).

"The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires ... [it] does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). The ADA regulations set forth various factors to consider when determining whether a function is essential including, but not limited to: "(i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3).

Defendant submits that the ability to work overtime is an essential function of Plaintiff's employment because the mandation policy adopted by the County states that "[i]t is understood that employees who cannot work overtime for a prolonged period of time cannot perform their job duties." (Dkt. 9–3 at 17 & Dkt. 9 at Ex. C). However, an employer's opinion as to whether a certain job function is an essential function of employment is only one of the many factors a court must

consider. Additionally, "while the court may be obligated to give deference to the employer's judgment, it is not required to blindly yield to it. Indeed, courts must make an initial inquiry into whether the employer actually requires all employees in the particular position to perform the allegedly essential function." *Colpoys*, 2013 WL 5437635, at *5, 2013 U.S. Dist. LEXIS 139653, at *12 (internal quotations and citations omitted). Here, Plaintiff alleges that other employees were in fact not required to work eight hours beyond the standard eight-hour shift but were required to work shorter overtime periods. (Dkt. 1 at ¶ 30). Additionally, Plaintiff alleges that she was permitted to work a modified schedule on some occasions. (*Id.* at ¶ 24).

 Further, there is no Second Circuit precedent holding that, as a matter of law, mandated overtime work for CNAs is an essential function of that type of employment. Rather, whether the ability to work mandated overtime is an essential function of Plaintiff's employment is a fact-specific inquiry that the Court is unable to decide on a motion to dismiss. Instead, the court must undertake a "case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995). "[U]ltimately, the question whether a task constitutes an essential function depends on the totality of the circumstances." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 120 (2d Cir.2004).

Defendant cites various cases in this district where mandatory overtime was found to be an essential function of a plaintiff's employment. (Dkt. 9–3 at 13–17). However, those cases were decided at the sum-

mary judgment stage, where further evidence was available regarding whether a particular facet of a plaintiff's employment was essential. At oral argument, Defendant cited one case decided at the motion to dismiss stage, *Dansler–Hill v. Rochester Inst. of Tech.*, 764 F.Supp.2d 577 (W.D.N.Y.2011). In *Dansler–Hill*, this Court granted a motion to dismiss an ADA claim where the plaintiff was terminated because he remained on disability leave after 26 weeks. The court reasoned that "a person who is on disability leave because he is disabled from performing his job is not 'otherwise qualified' to perform its essential functions. . . ." *Dansler–Hill*, 764 F.Supp.2d at 583.

Here, Defendant contends that Plaintiff's inability to perform mandated overtime renders her disabled from performing her job and is akin to an employee's taking a period of indefinite leave, much like the plaintiff in *Dansler–Hill*. At this stage of the litigation, the Court rejects Defendant's contention that Plaintiff's inability to perform overtime work is analogous to taking indefinite leave. Plaintiff was able to perform her regular job functions but she was unable to work certain periods of mandated overtime. She is not restricted from performing all of her job responsibilities. At this early stage in the litigation, the Court lacks the information required for consideration of the above-mentioned factors. Accordingly, "[t]hese factors cannot be weighed without further fact-finding." *Colpoys*, 2013 WL 5437635, at *5, 2013 U.S. Dist. LEXIS 139653, at *13. Therefore, Defendant's motion to dismiss Plaintiff's ADA claims on this ground is denied.

## VI. Reasonable Accommodation and Undue Hardship

Defendant argues that Plaintiff's reasonable accommodation claim must be reject-

ed as a matter of law because exempting her from working mandated overtime would interfere with the rights of her co-workers, who would be forced to work more than their fair share of mandated overtime. (Dkt. 9–3 at 18). Defendant also argues that Plaintiff was accommodated because the CNR Work Restriction Policy provided her with the ability to use 12 weeks of leave time to avoid mandated overtime. (*Id.* at 20). The Court will address these arguments together because "in practice, meeting the burden of non-persuasion on the reasonableness of the accommodation and demonstrating that the accommodation imposes an undue hardship amount to the same thing." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir.1995).

▇ To establish a prima facie reasonable accommodation claim, a plaintiff must allege that "with reasonable accommodation, plaintiff could perform the essential functions of the job at issue ... and ... the employer has refused to make such accommodations." *Rodal*, 369 F.3d at 118. Although the ADA does not provide a definition for what qualifies as a "reasonable accommodation," the ADA regulations set out a nonexclusive list of different methods of accommodation encompassed by that term. Reasonable accommodations may include: "job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities." 29 C.F.R. 1630.2(*o* )(2)(ii).

▇ "Whether or not something constitutes a reasonable accommodation is necessarily fact-specific. Therefore, determinations on this issue must be made on a case-by-case basis." *Wernick v. Fed. Reserve Bank*, 91 F.3d 379, 385 (2d Cir.1996) (internal citation omitted); *see also Borkowski*, 63 F.3d at 138 (" 'Reasonable' is a relational term: it evaluates the desirability of a particular accommodation according to the consequences that the accommodation will produce. This requires an inquiry not only into the benefits of the accommodation but into its costs as well."). Therefore, "[t]o avoid unfounded reliance on uninformed assumptions, the identification of the essential functions of a job requires a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." *Id.* at 140 (citations omitted).

▇ As to whether an accommodation is reasonable, a plaintiff:

> bears only a burden of production. This burden ... is not a heavy one. It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits. Once the plaintiff has done this, she has made out a *prima facie* showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant.

*Id.* at 138 (internal quotations and citations omitted). Here, Plaintiff has alleged a *prima facie* case of failure to accommodate. Namely, Plaintiff has alleged that she is disabled (Dkt. 1 at ¶¶ 13–14, 32); that Defendant had notice of this disability (*id.* at ¶ 16); that with a reasonable accommodation, she could perform her job (*id.* at ¶ 35); and that Defendant refused to make such accommodations, including denying her request to be excused from mandated overtime on eight occasions. (*Id.* at ¶¶ 23–25, 33).

▇ Whether a certain accommodation is reasonable is a fact-specific inquiry and must be made on a case-by-case basis.

Accordingly, such determinations are better reserved for summary judgment or trial rather than the pleading stage. *See Staron*, 51 F.3d at 356 (reversing district court's dismissal of plaintiff's ADA reasonable accommodation claim where determination of whether the modification was reasonable was fact specific); *Goonan v. FRB of N.Y.*, 916 F.Supp.2d 470, 482 n. 2 (S.D.N.Y.2013) ("at this early stage in the litigation, it would be inappropriate to deem unreasonable Plaintiff's request for some combination of a transfer or permission to telecommute."); *Tully–Boone v. N. Shore–Long Island Jewish Hosp. Sys.*, 588 F.Supp.2d 419, 425 (E.D.N.Y.2008) (plaintiff's reasonable accommodation claim not dismissed even where defendants argued it was unreasonable as a matter of law); *Price v. City of New York*, No. 09 CV 4183(NGG)(LB), 2011 WL 2490965, at *8, 2011 U.S. Dist. LEXIS 67421, at *27 (E.D.N.Y. Mar. 9, 2011) ("with respect to the reasonableness of an accommodation, it is premature at this stage of the litigation to dismiss plaintiff's claim...."). Although Defendant is correct in stating that Plaintiff is not entitled to select a specific accommodation (Dkt. 9–3 at 21), it does not follow that any accommodation offered by an employer is reasonable. Indeed, in this case, the alleged "accommodation" offered to Plaintiff was the same accommodation offered to all able-bodied employees (Dkt. 9–2, Ex. C), and does not take into account Plaintiff's specific alleged disability.

■ While an employer is required to make "reasonable accommodations" for an employee's disability, it "is not required to offer an accommodation that imposes an undue hardship on its program's operation...." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 88 (2d Cir.2004). The ADA defines "undue hardship" as "an action requiring significant difficulty or expense, when considered in light of the factors set forth in subparagraph (B)." 42 U.S.C. § 12111(10)(A). The factors include: "(i) the nature and cost of the accommodation needed under this Act; (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility; (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and (iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity." *Id.* § 12111(10)(B).

■ Defendant makes the blanket statement that "as a matter of law," Plaintiffs request for an accommodation must be rejected because it would interfere with the rights of other employees. (Dkt. 9–3 at 18). Defendant cites a number of cases purportedly supporting the proposition that any accommodation must be rejected if it interferes with the rights of other employees. (*Id.* at 18–20). These cases are substantively and procedurally inapposite. The cases cited by Defendant address an accommodation's effect on the seniority rights of other employees and relate to decisions issued on summary judgment, rather than at the motion to dismiss stage of litigation, where the court had sufficient evidence to adequately consider the factors set forth in 42 U.S.C. § 12111(10)(B). As explained above, decisions relating to accommodations must be decided on a case-by-case basis and require fact-specific inquiries that typically

cannot be taken at the early stages of litigation. Additionally, as Plaintiff points out in her opposition papers, the cases cited by Defendant are distinguishable because, unlike the plaintiffs in the cited cases, Plaintiff was able to work her normally assigned shifts and overtime, provided the overtime did not exceed 12 consecutive hours two times per week. (Dkt. 1. at ¶ 15 & Dkt. 13 at 9). Additionally, Defendant allegedly never offered an accommodation consistent with Plaintiff's physician's restrictions. (Dkt. 1 at ¶ 33 & Dkt. 13 at 9).

Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's ADA claims on the basis that she has been accommodated and that her request for an accommodation presented an undue hardship.

### VII. Plaintiffs Retaliation Claim

■ To establish a *prima facie* case of retaliation, a plaintiff must allege: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *McNamee v. Starbucks Coffee Co.*, 914 F.Supp.2d 408, 420–21 (W.D.N.Y.2012) (internal citation and quotations omitted); *see also McMenemy v. City of Rochester*, 241 F.3d 279, 282–83 (2d Cir.2001). Defendant argues that Plaintiff fails to sufficiently allege the fourth element of a retaliation claim because the alleged retaliation occurred before and after the alleged protected activity and Plaintiff fails to identify specific comparators in her complaint. (Dkt. 9–3 at 22).[2]

■ The Second Circuit has explained that proof of a causal connection can be established either directly or indirectly. *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir.1987). The causal connection can be established indirectly "by showing that the protected activity was followed closely by discriminatory treatment ... or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct...." *Id.* (citations omitted). The causal connection can be established directly "through evidence of retaliatory animus directed against a plaintiff by the defendant." *Id.* (citations omitted).

Here, Plaintiff's retaliation claim is far from a model of clarity. Indeed, Plaintiff does not even allege a retaliation claim as a separate cause of action. Plaintiff makes the conclusory allegation that she has been retaliated against by Defendant's attempts to enforce a policy "which has a disparate impact on individuals with disabilities" (Dkt. 1 at ¶ 33) but, as Defendant correctly points out, Plaintiff fails to sufficiently allege facts of similarly situated individuals to support this conclusory allegation of disparate treatment.

However, Plaintiff does appear to allege that she protested Defendant's policy by refusing mandated overtime on at least eight separate occasions and that as a result, Defendant subjected Plaintiff to various progressive disciplinary actions, ultimately leading to the termination of her employment. (*Id.* at ¶¶ 25, 26). Plaintiff further alleges that she complained to her Union and filed grievances, although she does not specify the time period that those complaints and grievances were filed nor does she specifically allege any resulting

---

**2.** Defendant also argued, for the first time in its post-oral argument letter submission, that Plaintiff's retaliation claim should be dismissed because it was not properly raised in

Plaintiff's EEOC charge. (Dkt. 25). Because this issue was not raised by Defendant previously, the Court will not consider it.

adverse employment action directly linked to those Union complaints and grievances. (*Id.* at ¶ 27).

Defendant argues that there is no temporal causation between the alleged protected activity and retaliation because Plaintiff was required to work mandated overtime before she requested an exemption to the policy, citing *Stephan v. West Irondequoit Cent. Sch. Dist.*, 450 Fed. Appx. 77 (2d Cir.2011). (Dkt. 9–3 at 22–23). However, *Stephan* involved a grant of summary judgment on a retaliation claim, as opposed to a motion to dismiss. Moreover, in this case Plaintiff does allege (albeit not with great clarity) that she was subjected to progressive discipline and ultimate termination as the result of exercising her right to protest the mandation policy by refusing to work mandated overtime. Thus, contrary to Defendant's contentions, Plaintiff is not simply alleging that she was required to work mandated overtime both before and after her alleged protected activity. Rather, she is alleging that she was subjected to progressive discipline and ultimate termination of employment as a result of engaging in protected activity.

Under the circumstances, and viewing the allegations in the light most favorable to Plaintiff at this stage of the proceedings, Defendant's motion to dismiss the retaliation claim is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend is granted, Defendant's motion to dismiss Plaintiff's second cause of action alleging a claim under the NYSHRL is granted, and Defendant's motion to dismiss Plaintiff's first cause of action alleging ADA discrimination and retaliation claims is denied. Plaintiff is directed to file the amended complaint without her NYSHRL claims within fourteen

(14) days of the entry of this Decision and Order, and Defendant is directed to answer Plaintiff's amended complaint within twenty (20) days thereafter.

SO ORDERED.